# 15-2143

## United States Court of Appeals for the Second Circuit



Louis Rivera,

*Plaintiff-Appellant,*

v.

Anjost Corporation, Joseph Zaro,

*Defendants-Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPENDIX

LAW OFFICE OF ROBERT S. POWERS
ROBERT S. POWERS
*Attorneys for Plaintiff-Appellant*
1540 August Road
North Babylon, New York 11703
(631) 940-7121
rpowers435@gmail.com

VENABLE LLP
MICHAEL J. VOLPE
*Attorneys for Defendants-Appellees*
1270 Avenue of the Americas, 25th Floor
New York, New York 10020
(212) 307-5500
mjvolpe@Venable.com

DICK BAILEY SERVICE (212) 608-7666 (718) 522-4363 (516) 222-2470 (914) 682-0848 Fax: (718) 522-4024
1-800-531-2028 - Email: appeals@dickbailey.com -Website: www.dickbailey.com

# <u>TABLE OF CONTENTS</u>

*Pages*

Docket Sheet ......................................................................... A1-A5

Notice of Motion for Summary Judgment, dated May
15, 2015 ............................................................................... A6-A7

Declaration of Adam G. Possidente, Esq. in Support of
Motion for Summary Judgment ............................................ A8-A9

    Exhibit A – Transcript of May 6, 2015 Conference ......................... A10-A37

    Exhibit B – Defendants' Personnel Profile Sheet for
    Plaintiff, dated July 31, 2007 ............................................ A38-A39

    Exhibit C – Sample Earning Statements for
    Plaintiff, reflecting salary of $850.00 ................................ A40-A49

    Exhibit D – Defendants' Personal Profile Sheet for
    Plaintiff, dated February 1, 2011 ...................................... A50-A51

    Exhibit E – Sample Earning Statements for
    Plaintiff, reflecting salary of $1,097.00 ........................... A52-A64

    Exhibit F – Sample Earning Statements for
    Plaintiff, reflecting salary of $1,207.00 ........................... A65-A86

    Exhibit G – Sample Earning Statements for
    Plaintiff, reflecting salary of $1,377.00 ......................... A87-A112

    Exhibit H – New York Department of Labor
    Opinion Letter RO-10-0063, dated December 7,
    2010 ............................................................................. A113-A116

i

*Pages*

Exhibit I – Relevant Excerpts of Louis Rivera's
Deposition Transcript, dated October 8, 2013.............................. A117-A180

Defendants' Statement of Undisputed Facts Pursuant
to Local Rule 56.1(A), dated May 15, 2015 ...................................... A181-A184

Declaration of Louis Rivera in Opposition to Motion
for Summary Judgment, dated May 29, 2015 ................................... A185-A186

Declaration of Robert S. Powers, Esq. in Opposition to
Motion for Summary Judgment, dated May 29, 2015................................A187

Declaration of Adam G. Possidente, Esq. in Support of
Motion for Summary Judgment, dated June 2, 2015....................................A188

Exhibit 1 – Relevant Excerpts of Louis Rivera's
Deposition Transcript, dated October 8, 2013.............................. A189-A191

Plaintiff's Response to Defendants' Statement of
Undisputed Facts Pursuant to Local Rule 56.1(A),
dated May 29, 2015......................................................................... A192-A193

Memo Endorsement granting Motion for Summary
Judgment, So-Ordered June 4, 2015................................................. A194-A195

Notice of Appeal filed July 6, 2015.............................................................A196

**A1**

CLOSED,APPEAL,ECF

**U.S. District Court**
**Southern District of New York (Foley Square)**
**CIVIL DOCKET FOR CASE #: 1:13−cv−00379−MGC**

Rivera v. Anjost Corporation et al
Assigned to: Judge Miriam Goldman Cedarbaum
Cause: 29:201 Denial of Overtime Compensation

Date Filed: 01/16/2013
Date Terminated: 06/05/2015
Jury Demand: Plaintiff
Nature of Suit: 710 Labor: Fair Standards
Jurisdiction: Federal Question

**Plaintiff**

**Louis Rivera**                    represented by    **Robert S. Powers**
Law Office of Robert S. Powers
1540 August Road
North Babylon, NY 11703
631−940−7121
Fax: (631)−940−7121
Email: rpowers435@gmail.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Anjost Corporation**              represented by    **Michael J. Volpe**
Venable LLP (NYC)
1270 Ave of the Americas
New York, NY 10020
(212)307−5500 x808−5676
Fax: (212)307−5598
Email: mvolpe@venable.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Gordon Possidente**
Venable LLP (NYC)
1270 Ave of the Americas
New York, NY 10020
(212)−370−6282
Fax: (212)−307−5598
Email: agpossidente@venable.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joseph Zaro**                     represented by    **Michael J. Volpe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Gordon Possidente**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/16/2013 | 1 | COMPLAINT against Anjost Corporation, Joseph Zaro. (Filing Fee $ 350.00, Receipt Number 465401057888)Document filed by Louis Rivera.(cde) (Entered: 01/22/2013) |
| 01/16/2013 | | SUMMONS ISSUED as to Anjost Corporation, Joseph Zaro. (cde) (Entered: 01/22/2013) |

| 01/16/2013 | | Magistrate Judge Frank Maas is so designated. (cde) (Entered: 01/22/2013) |
|---|---|---|
| 01/16/2013 | | Case Designated ECF. (cde) (Entered: 01/22/2013) |
| 03/06/2013 | 2 | NOTICE OF CHANGE OF ADDRESS by Robert S. Powers on behalf of Louis Rivera. New Address: Law Office of Robert S. Powers, 1540 August Road, North Babylon, New York, 11703, 631−940−7121. (Powers, Robert) (Entered: 03/06/2013) |
| 03/06/2013 | 3 | SUMMONS RETURNED EXECUTED. Joseph Zaro served on 2/14/2013, answer due 3/7/2013. Document filed by Louis Rivera. (Powers, Robert) (Entered: 03/06/2013) |
| 03/11/2013 | 4 | ENDORSED LETTER addressed to Judge Miriam Goldman Cedarbaum from Adam G. Possidente dated 3/5/2013 re: Defendants respectfully request an extension of time until 4/4/2013 to answer or move in response to the Complaint in this matter. ENDORSEMENT: Motion granted. Anjost Corporation answer due 4/4/2013; Joseph Zaro answer due 4/4/2013. (Signed by Judge Miriam Goldman Cedarbaum on 3/11/2013) (sac) (Entered: 03/11/2013) |
| 03/20/2013 | | Minute Entry for proceedings held before Judge Miriam Goldman Cedarbaum: Initial Pretrial Conference held on 3/20/2013. (Daniels, Anthony) (Entered: 03/22/2013) |
| 04/04/2013 | 5 | NOTICE OF APPEARANCE by Michael J. Volpe on behalf of Anjost Corporation, Joseph Zaro (Volpe, Michael) (Entered: 04/04/2013) |
| 04/04/2013 | 6 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Anjost Corporation, Joseph Zaro.(Volpe, Michael) (Entered: 04/04/2013) |
| 04/04/2013 | 7 | ANSWER to 1 Complaint. Document filed by Anjost Corporation, Joseph Zaro.(Volpe, Michael) (Entered: 04/04/2013) |
| 04/04/2013 | 8 | NOTICE OF APPEARANCE by Adam Gordon Possidente on behalf of Anjost Corporation, Joseph Zaro (Possidente, Adam) (Entered: 04/04/2013) |
| 04/21/2015 | 9 | LETTER MOTION for Conference addressed to Judge Miriam Goldman Cedarbaum from Robert S. Powers dated April 21, 2015. Document filed by Louis Rivera.(Powers, Robert) (Entered: 04/21/2015) |
| 04/28/2015 | | Status Conference/Discovery Conference set for 5/6/2015 at 02:30 PM in Courtroom 14A, 500 Pearl Street, New York, NY 10007 before Judge Miriam Goldman Cedarbaum. (ml) (Entered: 04/28/2015) |
| 05/06/2015 | | Minute Entry for proceedings held before Judge Miriam Goldman Cedarbaum: Status/Discovery Conference held on 5/6/2015; Conference is treated as pre−motion conference; Defendant to file motion for summary judgment by May 15; Plaintiff to respond by May 29; Return date for motion for summary judgment set for June 4, 2015 at 11:30 AM. (Court Reporter Tom Murray) (ml) (Entered: 05/06/2015) |
| 05/06/2015 | | Oral Argument on motion for summary judgment set for 6/4/2015 at 11:30 AM in Courtroom 14A, 500 Pearl Street, New York, NY 10007 before Judge Miriam Goldman Cedarbaum. (ml) (Entered: 05/06/2015) |
| 05/15/2015 | 10 | MOTION for Summary Judgment . Document filed by Anjost Corporation, Joseph Zaro. Responses due by 5/29/2015 Return Date set for 6/4/2015 at 11:30 AM.(Possidente, Adam) (Entered: 05/15/2015) |
| 05/15/2015 | 11 | DECLARATION of Adam G. Possidente in Support re: 10 MOTION for Summary Judgment .. Document filed by Anjost Corporation, Joseph Zaro. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit)(Possidente, Adam) (Entered: 05/15/2015) |
| 05/15/2015 | 12 | MEMORANDUM OF LAW in Support re: 10 MOTION for Summary Judgment . . Document filed by Anjost Corporation, Joseph Zaro. (Possidente, Adam) (Entered: 05/15/2015) |

| 05/15/2015 | 13 | RULE 56.1 STATEMENT. Document filed by Anjost Corporation, Joseph Zaro. (Possidente, Adam) (Entered: 05/15/2015) |
|---|---|---|
| 05/22/2015 | 14 | TRANSCRIPT of Proceedings re: conference held on 5/6/2015 before Judge Miriam Goldman Cedarbaum. Court Reporter/Transcriber: Thomas Murray, (212) 805−0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/15/2015. Redacted Transcript Deadline set for 6/25/2015. Release of Transcript Restriction set for 8/24/2015.(McGuirk, Kelly) (Entered: 05/22/2015) |
| 05/22/2015 | 15 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 5/6/2015 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 05/22/2015) |
| 05/29/2015 | 16 | MEMORANDUM OF LAW in Opposition re: 10 MOTION for Summary Judgment . . Document filed by Louis Rivera. (Powers, Robert) (Entered: 05/29/2015) |
| 05/29/2015 | 17 | DECLARATION of Louis Rivera in Opposition re: 10 MOTION for Summary Judgment .. Document filed by Louis Rivera. (Powers, Robert) (Entered: 05/29/2015) |
| 05/29/2015 | 18 | DECLARATION of Robert S. Powers in Opposition re: 10 MOTION for Summary Judgment .. Document filed by Louis Rivera. (Powers, Robert) (Entered: 05/29/2015) |
| 05/29/2015 | 19 | **FILING ERROR − WRONG EVENT TYPE SELECTED FROM MENU −** RESPONSE in Opposition to Motion re: 10 MOTION for Summary Judgment . *Rule 56 Response*. Document filed by Louis Rivera. (Powers, Robert) Modified on 6/1/2015 (db). (Entered: 05/29/2015) |
| 06/01/2015 | | **\*\*\*NOTICE TO ATTORNEY TO RE−FILE DOCUMENT − EVENT TYPE ERROR. Notice to Attorney Robert S. Powers to RE−FILE Document 19 Response in Opposition to Motion. Use the event type Response (non−motion) found under the event list Other Answers. (db) (Entered: 06/01/2015)** |
| 06/02/2015 | 20 | REPLY MEMORANDUM OF LAW in Support re: 10 MOTION for Summary Judgment . . Document filed by Anjost Corporation, Joseph Zaro. (Possidente, Adam) (Entered: 06/02/2015) |
| 06/02/2015 | 21 | DECLARATION of Adam G. Possidente in Support re: 10 MOTION for Summary Judgment .. Document filed by Anjost Corporation, Joseph Zaro. (Attachments: # 1 Exhibit 1)(Possidente, Adam) (Entered: 06/02/2015) |
| 06/03/2015 | 22 | RULE 56.1 STATEMENT. Document filed by Louis Rivera. (Powers, Robert) (Entered: 06/03/2015) |
| 06/04/2015 | | Minute Entry for proceedings held before Judge Miriam Goldman Cedarbaum: Motion Hearing held on 6/4/2015 re: 10 MOTION for Summary Judgment . filed by Joseph Zaro, Anjost Corporation; All parties having appeared; Defendants' Motion for Summary Judgment is granted. (Court Reporter Linda Fisher) (ml) (Entered: 06/04/2015) |
| 06/04/2015 | 23 | MEMO ENDORSEMENT granting 10 Motion for Summary Judgment. ENDORSEMENT: Motion for summary judgment granted. For oral opinion, see record of proceedings; close case. So ordered. (Signed by Judge Miriam Goldman Cedarbaum on 6/4/2015) (mro) (Entered: 06/05/2015) |
| 06/04/2015 | | Transmission to Judgments and Orders Clerk. Transmitted re: 23 Order on Motion for Summary Judgment, to the Judgments and Orders Clerk. (mro) (Entered: 06/05/2015) |

| 07/03/2015 | 24 | FILING ERROR − NO ORDER SELECTED FOR APPEAL − NOTICE OF APPEAL. Document filed by Louis Rivera. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Powers, Robert) Modified on 7/6/2015 (tp). (Entered: 07/03/2015) |
|---|---|---|
| 07/06/2015 |  | ***NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Powers, Robert to RE−FILE Document No. 24 Notice of Appeal. The filing is deficient for the following reason(s): the order/judgment being appealed was not selected. Re−file the appeal using the event type Corrected Notice of Appeal found under the event list Appeal Documents − select the correct order/judgment being appealed. (tp) (Entered: 07/06/2015) |
| 07/06/2015 | 25 | FILING ERROR − WRONG EVENT TYPE SELECTED FROM MENU − AMENDED NOTICE OF APPEAL re: 24 Notice of Appeal, 23 Order on Motion for Summary Judgment. Document filed by Louis Rivera. (Powers, Robert) Modified on 7/6/2015 (tp). (Entered: 07/06/2015) |
| 07/06/2015 |  | ***NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Powers, Robert to RE−FILE Document No. 25 Amended Notice of Appeal. The filing is deficient for the following reason(s): the wrong event type was used to file the appeal. Re−file the appeal using the event type Corrected Notice of Appeal found under the event list Appeal Documents − select the correct order/judgment being appealed. (tp) (Entered: 07/06/2015) |
| 07/06/2015 | 26 | FILING ERROR − WRONG EVENT TYPE SELECTED FROM MENU − AMENDED NOTICE OF APPEAL re: 24 Notice of Appeal, 23 Order on Motion for Summary Judgment. Document filed by Louis Rivera. (Powers, Robert) Modified on 7/6/2015 (tp). (Entered: 07/06/2015) |
| 07/06/2015 |  | ***NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Powers, Robert to RE−FILE Document No. 26 Amended Notice of Appeal. The filing is deficient for the following reason(s): the wrong event type was used to file the appeal. Re−file the appeal using the event type Corrected Notice of Appeal found under the event list Appeal Documents − attach the correct signed PDF − select the correct named filer/filers − select the correct order/judgment being appealed. (tp) (Entered: 07/06/2015) |
| 07/06/2015 | 27 | CORRECTED NOTICE OF APPEAL re: 24 Notice of Appeal, 23 Order on Motion for Summary Judgment. Document filed by Louis Rivera. (Powers, Robert) (Entered: 07/06/2015) |
| 07/06/2015 |  | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 27 Corrected Notice of Appeal. (tp) (Entered: 07/06/2015) |
| 07/06/2015 |  | Appeal Fee Due: for 27 Corrected Notice of Appeal. Appeal fee due by 7/20/2015. (tp) (Entered: 07/06/2015) |
| 07/06/2015 |  | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 27 Corrected Notice of Appeal filed by Louis Rivera were transmitted to the U.S. Court of Appeals. (tp) (Entered: 07/06/2015) |
| 07/20/2015 |  | Appeal Fee Payment: for 27 Corrected Notice of Appeal. Filing fee $ 505.00, receipt number 0208−11173438. (Powers, Robert) (Entered: 07/20/2015) |
| 07/22/2015 | 28 | TRANSCRIPT of Proceedings re: Conference held on 6/4/2015 before Judge Miriam Goldman Cedarbaum. Court Reporter/Transcriber: Linda Fisher, (212) 805−0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/17/2015. Redacted Transcript Deadline set for 8/27/2015. Release of Transcript Restriction set for 10/23/2015.(Rodriguez, Somari) (Entered: 07/22/2015) |
| 07/22/2015 | 29 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Conference proceeding held on 06/04/2015 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made |

| | | remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 07/22/2015) |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS RIVERA,

                Plaintiff,

     – against –

ANJOST CORPORATION and JOSEPH
ZARO,

               Defendants.

Case No.:  13-cv-00379 (MGC)

**NOTICE OF MOTION
FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

        PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law in Support

of Defendants' Motion for Summary Judgment, Defendants' Statement of Undisputed Material

Facts Pursuant to Local Rule 56.1(a), and the Declaration of Adam G. Possidente and the

exhibits annexed thereto, Defendants Anjost Corporation and Joseph Zaro (together,

"Defendants") will move this Court, before the Honorable Miriam Goldman Cedarbaum,

Courtroom 14A, 500 Pearl Street, New York, New York 10007, on June 4, 2015 at 11:30 a.m.,

for an order granting summary judgment against Plaintiff, and granting Defendants such other

and further relief as the Court deems just and proper.

        PLEASE TAKE FURTHER NOTICE that, pursuant to the Order of this Court entered on

May 6, 2015, answering papers, if any, are required to be served on the undersigned no later than

May 29, 2015.

Dated: New York, New York
       May 15, 2015

                         **VENABLE LLP**

                         _____/s/_____
                         Michael J. Volpe
                         Adam G. Possidente
                         Rockefeller Center
                         1270 Avenue of the Americas, 24th Floor
                         New York, New York 10020

Telephone:  (212) 307-5500
Fax: (212) 307-5598

*Attorneys for Defendants Anjost Corporation
and Joseph Zaro*

To: Robert S. Powers
   Law Office of Robert S. Powers
   1540 August Road
   North Babylon, NY 11703
   Telephone: (631) 940-7121
   Email: rpowers435@optimum.net

   *Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS RIVERA,

                    Plaintiff,

        – against –

ANJOST CORPORATION and JOSEPH ZARO,

                 Defendants.

Case No.:  13-cv-00379 (MGC)

**DECLARATION
OF ADAM G. POSSIDENTE**

      I, **ADAM G. POSSIDENTE,** declare under penalty of perjury that the foregoing is true and correct:

      1.      I am an associate at the law firm Venable LLP in New York, New York.  Venable LLP represents Defendants Anjost Corporation and Joseph Zaro ("Defendants") in the above-captioned matter (the "Action").  I submit this Declaration in support of Defendants' Motion for Summary Judgment.  I have personal knowledge of the facts stated herein, unless otherwise stated, and if called upon to do so, I would competently testify thereto.

      2.      A true and correct copy of the transcript of the May 6, 2015 Conference before the Honorable Miriam Goldman Cedarbaum in the Action is attached hereto as **Exhibit A.**

      3.      A true and correct copy of Defendants' Personnel Profile Sheet for Plaintiff, dated July 31, 2007, is attached hereto as **Exhibit B.**

      4.      True and correct copies of sample earning statements for Plaintiff, reflecting that he earned a weekly salary of $850 for a period of time while employed by Defendants, are attached hereto as **Exhibit C.**

      5.      A true and correct copy of Defendants' Personnel Profile Sheet for Plaintiff, dated February 1, 2011, is attached hereto as **Exhibit D.**

6.      True and correct copies of sample earning statements for Plaintiff, reflecting that he earned a weekly salary of $1,097 for a period of time while employed by Defendants, are attached hereto as **Exhibit E.**

7.      True and correct copies of sample earning statements for Plaintiff, reflecting that he earned a weekly salary of $1,207 for a period of time while employed by Defendants, are attached hereto as **Exhibit F.**

8.      True and correct copies of sample earning statements for Plaintiff, reflecting that he earned a weekly salary of $1,377 for a period of time while employed by Defendants, are attached hereto as **Exhibit G.**

9.      A true and correct copy of a New York Department of Labor Opinion Letter RO-10-0063, dated December 7, 2010, is attached hereto as **Exhibit H.**

10.     True and correct copies of relevant excerpts of plaintiff Louis Rivera's deposition transcript, dated October 8, 2013, are attached hereto as **Exhibit I.**

Dated: New York, New York
       May 15, 2015

                           _____/s/_____
                                 Adam G. Possidente

# Exhibit A

F56rrivc                                                                    1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   LOUIS RIVERA,

4                  Plaintiff,

5            v.                          13 Civ. 379 (MGC)

6   ANJOST CORPORATION and JOSEPH
    ZARO,
7                                        Conference
                   Defendants.
8   ------------------------------x

9                                        New York, N.Y.
10                                       May 6, 2015
                                         2:30 p.m.
11
    Before:
12
              HON. MIRIAM GOLDMAN CEDARBAUM
13
                                         District Judge
14

15

16

17

18          APPEARANCES

19
    ROBERT S. POWERS
20        Attorney for Plaintiff

21
    VENABLE LLP
22        Attorneys for Defendants
    BY:  ADAM G. POSSIDENTE
23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

F56rrivc                                                                  2

 1                 (Case called; in chambers)

 2                 THE COURT:  Good afternoon.  This is a very slow-

 3     moving case.

 4                 MR. POSSIDENTE:  It really hasn't moved, your Honor.

 5     Plaintiff hasn't conducted any discovery yet or done anything.

 6                 THE COURT:  Then why should I dismiss for failure to

 7     prosecute?

 8                 MR. POWERS:  He isn't quite correct.

 9                 THE COURT:  It doesn't have to be exact.  It has to be

10     close.

11                 MR. POWERS:  He conducted my client's deposition.  My

12     client was deposed.  I sent out notices for his client's

13     deposition, and he never's produced his clients for deposition.

14                 THE COURT:  Why didn't you apply to the Court to

15     depose his client?

16                 MR. POWERS:  At that point we went into settlement

17     discussions.  We went back and forth for a while.  Finally,

18     those discussions went by the board.

19                 THE COURT:  You have not deposed the defendant yet?

20                 MR. POWERS:  I have not deposed the defendant.

21                 THE COURT:  When was this lawsuit instituted?  When

22     did you file the complaint?

23                 MR. POWERS:  In 2013.

24                 THE COURT:  You have not done anything since?

25                 MR. POWERS:  We have gotten discovery.  We have gotten

F56rrivc                                                                    3

1    some documentation from the defendants, substantial

2    documentation.

3              THE COURT:  What kind of documentation?

4              MR. POWERS:  We have all the employment records of the

5    defendant.

6              THE COURT:  What do they show you?

7              MR. POWERS:  They showed me that the plaintiff was

8    paid different amounts each week, he was not paid the same

9    amounts, depending upon how many days he worked in the week.

10             THE COURT:  How many days?

11             MR. POWERS:  Right, based on a daily --

12             THE COURT:  What was the plaintiff's job?

13             MR. POWERS:  He was, I guess, the manager of a

14   commissary.  I think it was at Grand Central.

15             THE COURT:  When you say a commissary, what do you

16   mean?

17             MR. POWERS:  This's a store that they operate.

18             THE COURT:  Who are "they"?

19             MR. POWERS:  Zaro's.

20             THE COURT:  This is a bakery?

21             MR. POWERS:  It's a retail store.  He prepared foods

22   and whatnot, made foods and whatnot for that store and other

23   stores, plus he helped run the store at Grand Central.

24             THE COURT:  So partly he was a chef and partly he

25   was --

F56rrivc                                                                    4

1              MR. POWERS:  He was a manager.

2              THE COURT:  -- a manager of some kind?

3              MR. POWERS:  Yes.

4              THE COURT:  Your position is that he should be paid by

5    the hour and paid overtime for overtime hours, is that right?

6              MR. POWERS:  My position is that although he could

7    have been in an exempt classification by paying him on a daily

8    rate, they lost the right to an exemption.

9              THE COURT:  Is there some provision of the statute

10   that says if you pay a different way, it makes him a different

11   kind of employee?

12             MR. POWERS:  The provision of the statute, it is

13   actually the regulations of the Department of Labor.

14             THE COURT:  What regulation do you rely on?

15             MR. POWERS:  229 C.F.R. 541.118.

16             THE COURT:  That says what?

17             MR. POWERS:  It says that an employee is considered

18   paid on a salary basis if he regularly receives each pay period

19   on a weekly or less frequent basis a predetermined amount

20   constituting all or part of his compensation, which amount is

21   not subject to reduction because of the variations in the

22   quality or quantity in work performed.  If you pay someone on a

23   per day rate, you don't come within the statutory provision,

24   you don't get the benefit of being a salaried employee.

25             THE COURT:  Why is that?  I thought you want him to be

F56rrivc                                                                        5

1      an hourly employee.

2              MR. POWERS:  Yes, that's correct.  What I'm saying is

3      if you pay someone on less than a weekly or monthly basis, then

4      he becomes an hourly employee.

5              THE COURT:  I don't hear that in what you read.  What

6      says that if you are not paid --

7              MR. POWERS:  If you are paid more frequently than the

8      minimum weekly requirement, then you don't fit the definition

9      of a salaried employee under this provision.

10             THE COURT:  Is that what that language says, what you

11     just read to me?  No, that's not what it says.

12             MR. POWERS:  If he regularly receives each pay period

13     on a weekly or less frequent basis.  In this case he is on a

14     more frequent basis, so he doesn't comply --

15             THE COURT:  You think if you earn by the hour and not

16     by the week, it makes a difference?

17             MR. POWERS:  Yes.  In other words, if you pay somebody

18     basically for a day as opposed to a week, under the statute or

19     under the regulation --

20             THE COURT:  If you are paid for a day and you are an

21     hourly employee, it depends on how many hours you work, isn't

22     that right?

23             MR. POWERS:  Correct.

24             THE COURT:  Which is less than a day can be.  You can

25     be an hourly employee for less than a day.

```
 1              MR. POWERS:  Certainly.

 2              THE COURT:  But that's not what you just said.

 3              MR. POWERS:  If you pay somebody on a daily rate,

 4  under the regulation, in other words, if I have employees and I

 5  say I'll pay you $100 a day, or let's say $300 a day,

 6  whatever --

 7              THE COURT:  How does that make you not an hourly

 8  employee?

 9              MR. POWERS:  It doesn't.  You become an hourly

10  employee under the statute.

11              THE COURT:  I see, if you're paid for a day.  But if

12  you're paid by the hour, you're not.  That can't be the rule.

13              MR. POWERS:  No.  If you're paid by the hour, you are

14  obviously an hourly employee.  But you don't get the benefit of

15  the statute if you're paid at a daily rate.

16              THE COURT:  How do you determine whether someone is

17  paid on a daily rate?

18              MR. POWERS:  You determine what is their rate of pay.

19  In this case if he worked six days, he got one amount; if he

20  worked seven days, he got a different amount.

21              THE COURT:  Weren't there more hours on seven days?

22              MR. POWERS:  But he was paid based on a daily basis.

23              THE COURT:  How do you know that?  What is it that his

24  paystub showed?

25              MR. POWERS:  The paystub itself would only show the
```

1    amount.

2            THE COURT:  The number of hours it would normally show

3    if he were an hourly employee, isn't that right?

4            MR. POWERS:  I'm not sure.  Well, I think they did

5    show hours, but that was only based on the day, it wasn't the

6    actual hours that he worked.  In other words, he could have

7    worked 72 hours, and I think they would only show 40.  But that

8    is just because of the computer.

9            THE COURT:  You don't have any such paystub that

10   showed only 40 hours on a day that he worked all day?

11           MR. POWERS:  They didn't compute his rate based on

12   hours.  They didn't pay him based on hours.  They paid him

13   based on a daily rate.  If he worked seven hours, he would get

14   the same as if he worked 12 hours.

15           THE COURT:  Did that ever happen?

16           MR. POWERS:  It happened all the time.

17           THE COURT:  Let's review.  What did he earn?

18           MR. POSSIDENTE:  Here is the problem, your Honor, with

19   all of this.  To stick to the merits -- well, let me back up.

20   The timing on this case is as follows.  Mr. Rivera commences

21   the action in January 2013.  We proceed to produce, pursuant to

22   our Rule 26 obligations, all of his pay records and his

23   employment jacket, which are the documents we are talking about

24   now.  Then we take Mr. Rivera's deposition later that year.

25   Plaintiff doesn't conduct any discovery for an entire year

1   until he serves deposition notices in April of 2014, a full 13

2   months after he has commenced the litigation.

3        THE COURT:  Wow.  And the complaint doesn't set out

4   what days he received what pay?

5        MR. POSSIDENTE:  This is what is interesting.  The

6   complaint just alleges that he was an exempt employee, which,

7   based on Mr. Rivera's testimony and what Mr. Powers just said,

8   is demonstrably untrue.  He was the manager of Zaro's

9   commissary, which is in Grand Central, true, but it is sort of

10  the preparation station.  Zaro's has a bunch of different

11  bakeries around the city.  The commissary is where they'll go

12  and they'll prep food, they'll prep sandwiches and bagels and

13  all sorts of things that the bakery sells and distribute them

14  out.

15       Mr. Rivera is a trained chef, as I understand it, but

16  his job there was really a management position.  He was

17  managing the 14 to 15, as he testified, souse chefs that were

18  working the kitchen.  He worked a five-day week.  He was paid a

19  salary, which is sort of I think the key distinction here that

20  we can circle back to.

21       THE COURT:  He was paid by the week?

22       MR. POSSIDENTE:  He was paid a weekly salary, not

23  subject to any nonstandard deductions, only deductions that we

24  took or the typical SSI, Social Security, and the normal

25  Medicare deductions.  But no deductions for hours, which is I

F56rrivc                                                                        9

1    think the real key point here.

2           We received these notices of deposition a year late, a

3    year into the case, and sent a letter to Mr. Powers saying

4    these deposition notices are deficient because we had appeared

5    before your Honor in March of 2013 and had entered into a

6    scheduling order which called for discovery to be complete.

7           THE COURT:  Where is that scheduling order?

8           MR. POSSIDENTE:  Unfortunately -- we handed it to your

9    Honor -- it seems to have gotten misplaced in the mail.  The

10   scheduling order called for discovery to close in October of

11   2013.  Mr. Powers took no discovery until he attempted to take

12   discovery of our clients in 2014.

13          We sent him a letter saying these notices are a

14   nullity given that they come after the date for the close of

15   discovery.  That's in April.  I hear nothing until August or

16   September, when I get a call from Mr. Powers saying, I've

17   received your letter and what is your position vis-a-vis this

18   case.  I said, my position is your client was paid accurately,

19   but we are willing to discuss a nuisance value settlement to

20   avoid the cost and risk and pain of litigation.  We discussed

21   that for a few months, and here we are.

22          As to the merits of the case, the way Mr. Rivera was

23   paid and what the pay records and what Mr. Rivera's testimony

24   establish is that he was paid a salary 40 hours a week.  He

25   received sick time, he received vacation time, he received

1    personal days, all paid.  In order to incentivize Mr. Rivera

2    toward extra time, they would ask him to work an extra day here

3    or there and they would pay him for that day.

4            THE COURT:  By the day?

5            MR. POSSIDENTE:  By the day for that sixth day.

6            That is the schedule that was never so ordered by your

7    Honor, but defendants complied with those dates.

8            The way Mr. Rivera was paid was to receive a salary

9    for 40 hours a week.  When he was asked to work extra time, in

10   order to incentivize him to be willing to work the extra days,

11   he was paid one-fifth of his salary, which is I guess where the

12   date rate issue comes from.

13           The problem is that under 29 C.F.R. 541.604, that's

14   absolutely permissible.  That section of the C.F.R. says an

15   employer may provide an exempt employee with additional

16   compensation without losing the exemption or violating the

17   salary basis requirement if the employment arrangement also

18   includes a guarantee of at least the minimum weekly required

19   amount paid on a salary basis.  That is literally exactly how

20   Mr. Rivera was paid.

21           The problem we have here is we have a plaintiff that

22   has taken no discovery for a year, or now two really, with some

23   settlement discussions in there, to be fair.  But he was

24   absolutely paid and his testimony and the pay records establish

25   that he was paid in this manner.  I actually have a sample of

 1   the records here, if you think it would be helpful to see how

 2   he was paid.  But this hourly versus daily, that distinction

 3   doesn't matter.

 4             THE COURT:  For how many years did he work there?

 5             MR. POSSIDENTE:  The complaint says 2007 to 2012.

 6             THE COURT:  For five years.

 7             MR. POSSIDENTE:  Five years.

 8             THE COURT:  And he never complained?

 9             MR. POSSIDENTE:  I don't think he complained, because

10   he was being paid a salary and then he was asked to work extra

11   time.  He didn't have to work.  He was asked to work extra

12   days.  When he would work that, he was paid extra.  So he was

13   incentivized to work more time in total compliance with the

14   C.F.R.  There is actually Second Circuit case law that says, it

15   is Havey v. Homebound Mortgage, 547 F.3d 158.  Additional

16   compensation besides a salary is not inconsistent with the

17   salary basis of payment.

18             So no.  I assume he was happy to do it because he was

19   being paid above and beyond his salary for doing extra work

20   that as an exempt employee he could have been asked to do

21   anyway.

22             THE COURT:  I see.  When did he leave his employment?

23             MR. POSSIDENTE:  In 2012 he was terminated.

24             THE COURT:  He was terminated?

25             MR. POSSIDENTE:  Yes.

F56rrivc                                                                12

```
 1            THE COURT:  He didn't leave voluntarily?

 2            MR. POSSIDENTE:  Unfortunately, he was terminated for

 3    reasons relating to a sexual harassment issue.  Our position

 4    here is given the facts of the case and the fact that he was

 5    paid in absolute compliance with the law and the fact that no

 6    discovery has been taken for two years, the case should be

 7    dismissed.  The claims are meritless and there has been an

 8    enormous delay in getting this case resolved.

 9            THE COURT:  But you haven't moved to dismiss for

10    failure to prosecute.  Why?

11            MR. POSSIDENTE:  Frankly, your Honor, it wasn't our

12    burden.  We didn't think it was our burden to move the case

13    forward.

14            THE COURT:  Of course it is not your burden.

15            MR. POSSIDENTE:  Now that we are here and Mr. Rivera

16    has resuscitated the case, we filed a letter seeking permission

17    to move for summary judgment based upon what we just discussed

18    or failure to prosecute if Mr. Rivera is now going to push the

19    case forward.  While the case was not being litigated, as the

20    defendants, we felt no obligation to advance the case that was

21    effectively for all intents and purposes stayed.

22            THE COURT:  What happened to Mr. Rivera during those

23    year?

24            MR. POWERS:  Which years?

25            THE COURT:  The years in which you did not prosecute
```

F56rrivc                                                                          13

1    this case.

2              MR. POWERS:  He appeared for his deposition.

3              THE COURT:  That was not part of prosecuting the case.

4              MR. POWERS:  I understand that.  Your Honor, that was

5    on my shoulders, not his.

6              THE COURT:  That's neither here nor there.  He calls

7    himself the plaintiff here.

8              MR. POWERS:  I understand that, your Honor.

9              THE COURT:  Is he working somewhere else as a chef?

10             MR. POWERS:  He gets jobs off and on, yes.

11             THE COURT:  But he doesn't have continuous employment?

12             MR. POWERS:  I know he's been in at least three or

13   four different positions since.  Whether you consider that

14   continuous or not, they are not the same level of skill.

15             THE COURT:  Have you deposed him yet?

16             MR. POSSIDENTE:  Yes, we have.  We took his deposition

17   in 2013, as a matter of fact.

18             THE COURT:  Is there anything in that deposition that

19   shows that he was not paid in the fashion that has just been

20   described?  When he worked an additional day at the request of

21   his employer, he was given additional compensation?

22             MR. POWERS:  That's correct.  The case citation he

23   refers to refers to the contractual agreement.

24             THE COURT:  Excuse me?

25             MR. POWERS:  The contractual arrangement.  That was

1    not the contractual arrangement.  That was not the agreement.

2            THE COURT:  You think nobody can ever be an exempt

3    employee without agreeing in a contract that he is?

4            MR. POWERS:  No.  I think that to make an exempt

5    employee continue to be exempt when you pay him different

6    rates --

7            THE COURT:  Not different rates but different amounts.

8            MR. POWERS:  Different amounts based on the number of

9    days.

10           THE COURT:  That is entirely different from different

11   rates.

12           MR. POWERS:  Right.

13           THE COURT:  The rates are not different when you do

14   that.

15           MR. POWERS:  OK.  They are paying him on a daily rate,

16   but there is no agreement to that effect.

17           THE COURT:  Where is the language that says if he is

18   paid by the day?

19           MR. POSSIDENTE:  In the C.F.R., your Honor?

20           THE COURT:  Yes.

21           MR. POSSIDENTE:  The C.F.R. says, "An employer may

22   provide an exempt employee with additional compensation without

23   losing the exemption or violating the salary basis requirement

24   if the employment arrangement also includes a guarantee of at

25   least the minimum weekly required amount paid on a salary

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

F56rrivc                                                                   15

1   basis."  That is from the C.F.R.

2              I see nothing in there that says anything about a

3   contractual arrangement.  It is an employment arrangement which

4   is simply I hired you and I will pay you a salary.  In Mr.

5   Rivera's case it ranged from something like $800 to 12, $1300 a

6   week.  In addition to that, if I ask you to work an additional

7   day, I will then pay you some additional form of money.  In

8   this case, Zaro's chose, permissibly under the C.F.R., to pay

9   him one-fifth of his salary.

10             THE COURT:  Why does that change him from being a

11  salaried employee or exempt employee?

12             MR. POWERS:  Again, the language he just referred to

13  specifically talked about a guarantee in the employment

14  arrangement.

15             THE COURT:  What is that?

16             MR. POSSIDENTE:  I guess what he is talking about is

17  if the employment arrangement also includes a guarantee of at

18  least the weekly required amount paid on a salary basis.  I

19  think the plain language of that means if he is paid his

20  minimum weekly salary regardless of how many hours a week he

21  works and is also paid extra, it doesn't upset his exemption.

22             THE COURT:  The fact that he is exempt.

23             MR. POSSIDENTE:  Exactly.  Here he was absolutely paid

24  his minimum salary every week.

25             THE COURT:  You are not claiming that he was not given

F56rrivc                                                              16

1     the amount of money he was entitled to?

2             MR. POWERS:  That's the issue in the case, whether he

3     was given the money he was entitled to.

4             THE COURT:  You are the plaintiff here.  What is it

5     you are claiming he was entitled to?

6             MR. POWERS:  I'm claiming that he was entitled to

7     overtime because his employment arrangement guaranteed --

8             THE COURT:  Let's pick a day.  Point out to me what he

9     should have received for that day.

10            MR. POWERS:  My argument is that if his employment

11    arrangement had him paid on a daily basis, in other words,

12    whatever, $70 a day, if he worked 6 days he got 1300; if he

13    worked 7 days, he got 1600.

14            MR. POSSIDENTE:  Which is fine because if he worked 5

15    days, to use the example, if he worked 5 days, he got 1300, if

16    he worked 4 or 3 or 2, he got 1300.  If he worked 6 or 7, he

17    got extra.  That's how he was paid, and that is totally

18    permissible under the C.F.R.  That is the distinction we have

19    here.  It is not a day rate, because the number didn't go down,

20    it only went up.

21            The C.F.R. allows that distinction to survive and

22    allows an exempt employee to be incentivized to work above and

23    beyond what his normal salary is in exchange for additional

24    compensation, which makes sense from an employment perspective.

25            If I have an employee who is doing a good job as an

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  employee and I would like him to work more hours, beyond his

2  salary basis, it would make total sense for me to say to him

3  and would be fair for me to say to him, I'd like you to work

4  more and I'll compensate you above and beyond your salary.  But

5  if he suddenly falls sick for two days with a cold and can't

6  report in, the salary then isn't docked down; it still stays as

7  a salary basis.

8             THE COURT:  There was no docking of his salary, is

9  that right?

10             MR. POWERS:  He worked six or seven hours a day, other

11  than vacation, his entire period.

12             MR. POSSIDENTE:  And the vacation was --

13             THE COURT:  Less than eight hours a day?

14             MR. POWERS:  No.  He worked basically 72 to 80 hours a

15  week for 5 years.

16             THE COURT:  I'm not talking about a week.  I'm talking

17  about per day.

18             MR. POWERS:  He worked between 10 and 12 hours a day.

19             THE COURT:  Do you agree with that?

20             MR. POSSIDENTE:  I don't know.  There has been no

21  evidence proffered.  As an exempt employee, I don't believe we

22  had him clock in and clock out and kept time records.  He is an

23  exempt employee.  If he is a salaried employee -- I'm a salary

24  employed at my firm.  If I work 70 hours a week, I work 70

25  hours a week.  If I work 30 hours a week, I work 30 hours a

F56rrivc                                                        18

1   week.

2           That's the whole point of the exemption.  You are paid

3   an amount.  If you happen to work 20 or 80 hours, you are still

4   paid the amount.  That's what Mr. Rivera was paid.  I don't

5   know how much he worked.  I think he testified --

6           THE COURT:  Is there any evidence that he worked more

7   than 8 hours a day?

8           MR. POWERS:  I don't have it in front of me, but I'm

9   pretty certain his testimony at the deposition was that he

10  worked 70, 80 hours a week every week.

11          THE COURT:  That was what he did regularly?

12          MR. POWERS:  Yes.

13          THE COURT:  That was not by the hour, that was by the

14  day?

15          MR. POWERS:  By the week.  He was working basically 10

16  to 12 hours a day every day that he was there while he was

17  employed.

18          THE COURT:  He did that over a period of time, so that

19  was his regular workday?

20          MR. POWERS:  Yes.

21          THE COURT:  He started at what hour?

22          MR. POWERS:  He started at, I believe, 2:00 or 3:00 in

23  the morning, and he worked until 1:00 or 2:00 in the afternoon.

24          THE COURT:  Do you know who chose the hour he started?

25          MR. POWERS:  I suspect he was told --

```
1              THE COURT:  I don't want to know what you suspect.

2              MR. POWERS:  I don't know.

3              THE COURT:  There is no evidence of that, is that what

4   you are telling me is this.

5              MR. POWERS:  There is no evidence at this point.  When

6   I take the deposition, I'm sure the --

7              THE COURT:  You don't depose your own client.

8              MR. POWERS:  No.  I'm say saying when I take the

9   deposition of the defendant, certainly that is a question I

10  will ask him.

11             THE COURT:  Why have you sat on this case for more

12  than a year?

13             MR. POWERS:  I had some rather unfortunate personal

14  problems, your Honor, which I could tell you.  I would prefer

15  not to.

16             THE COURT:  You never during that year wrote to say

17  that I do not wish to have this case prosecuted, I am just not

18  in a position to pay attention to it?

19             MR. POWERS:  I didn't disclose that to anybody.

20             THE COURT:  But you agree you have not prosecuted this

21  case up to today?

22             MR. POWERS:  That's correct, I agree with that.

23             THE COURT:  Why should I not dismiss it on that

24  ground, for failure to prosecute?

25             MR. POWERS:  I would assume that the Court would
```

F56rrivc                                                              20

1    rather -- if counsel is correct in his analysis of the law,

2    then let's dismiss it on the merits as opposed to --

3              THE COURT:  Why?  Why shouldn't I, as happened,

4    dismiss for failure to prosecute?

5              MR. POWERS:  My client appeared for the deposition.

6    We have received discovery.  There is not that much to do to

7    finish off discovery.

8              THE COURT:  I don't know what you mean.  In any event,

9    you want to move to dismiss, move for summary judgment, is that

10   right?

11             MR. POSSIDENTE:  I would take guidance from your

12   Honor.  I would probably move to's dismiss for failure to

13   prosecute grounds or, in the alternative, move for summary

14   judgment.  I'd take guidance from how your Honor would like to

15   proceed on that.  We certainly think the case is dismissible on

16   either ground.

17             THE COURT:  When was the answer filed?

18             MR. POSSIDENTE:  April 2013.

19             THE COURT:  There was no answer filed in this case --

20             MR. POSSIDENTE:  No, no, the answer to the complaint,

21   April 2013 it was filed.

22             THE COURT:  I see.  So it really was defaulted?

23             MR. POSSIDENTE:  I'm sorry?

24             THE COURT:  The answer to the complaint was due within

25   a period of time under the rules.

F56rrivc                                                                    21

1           MR. POSSIDENTE:  Yes.  The answer was filed

2    appropriately.

3           THE COURT:  Was it timely filed?

4           MR. POSSIDENTE:  I'm sorry.  I understand.  We sought

5    and received an extension from the Court to be able to file in

6    April 2013, and we filed timely within the confines of that

7    extension.

8           THE COURT:  I think at this point you should move for

9    summary judgment.  For that purpose, as you know, you have to

10   file a statement of undisputed facts for which you have

11   evidence under the rules.

12          MR. POSSIDENTE:  Where should we make that motion,

13   your Honor?

14          THE COURT:  I think that is the most orderly way the

15   proceed here unless I dismiss for failure to prosecute.

16          MR. POSSIDENTE:  Should we move in the alternative for

17   failure to prosecute, your Honor?  Where we are, as you

18   correctly pointed out, there has been no prosecution by the

19   plaintiff.

20          THE COURT:  You should be able in that case to seek

21   summary judgment, isn't that right?

22          MR. POSSIDENTE:  In this instance, yes, we can seek

23   summary judgment.

24          THE COURT:  You have discovery which you can use in

25   that regard?

F56rrivc                                                                    22

1               MR. POSSIDENTE:  Correct.

2               THE COURT:  I think that is probably the most orderly

3    way to proceed.  I do require a pre-motion conference, which is

4    what I considered this to be, for summary judgment.

5               During that whole time you did not write to me and say

6    for extraordinary reasons we need to delay the movement of this

7    case.

8               MR. POWERS:  That is correct, your Honor.

9               THE COURT:  It's a very risky way to proceed when you

10   are the plaintiff.

11              MR. POWERS:  I understand that, your Honor.

12              THE COURT:  Very well.

13              MR. POSSIDENTE:  Is there a date certain by which we

14   should plan to move for summary judgment, your Honor?

15              THE COURT:  You're talking about the return date?

16              MR. POSSIDENTE:  Yes.

17              THE COURT:  Not the date of the motion.

18              MR. POSSIDENTE:  Yes.  Or should we consult and enter

19   into a briefing schedule with a return date?

20              THE COURT:  I don't trust briefing schedules in this

21   case.  What is a week from Thursday?  Is there any reason why

22   you shouldn't make it returnable on May 14th?  I hear oral

23   argument on all motions, and you have to make the motion

24   returnable on a date certain under my rules.

25              MR. POSSIDENTE:  Yes, we can make it by then.

F56rrivc                                                                    23

1          THE COURT:  That would be the return date.  You will

2     say please take notice that on such and such date you will do

3     whatever.  I have rules on all of this.  My rules provide when

4     you have to respond on paper and you both have to appear on the

5     return date.  I hear oral argument on the return date.

6          Is that a copy of my rules, Michael?

7          THE CLERK:  Yes.

8          THE COURT:  Thank you.

9          You received that when you filed the case.  The

10    clerk's office gave you a copy of my rules.

11         MR. POWERS:  Correct.

12         MR. POSSIDENTE:  I guess your Honor is saying I should

13    file the notice of motion --

14         THE COURT:  Returnable two weeks from tomorrow.  All

15    right, we'll make it two weeks.  May 21st, that's a Thursday.

16    I'm going to be away that day.

17         MR. POWERS:  On this schedule he would have to make it

18    22 days before the return date.

19         THE COURT:  I think it should be made returnable May

20    20th, which is two weeks from today.  How much time did you say

21    you have to respond?

22         MR. POWERS:  22 days before the return date.  Then my

23    papers are due the week before the return date, one week

24    before.

25         THE COURT:  Correct.  Your papers are due the week

**A34**

F56rrivc                                                                      24

1   before the return date, and I will hear you both on the return

2   date for oral argument at 11:30 in the morning.  Very well.

3            MR. POWERS:  Your Honor, I am not trying to be

4   difficult, but let's assume that he got his papers ready, say,

5   even by Friday.  Under these rules he wouldn't be able to make

6   the return date until 22 days from that day.

7            THE COURT:  Isn't that what we have here?

8            MR. POWERS:  No.  If you make it the 20th, that's two

9   weeks from today.  I would have to respond by next Wednesday,

10  and I don't even have his papers yet.  Your rules basically

11  contemplate I have 15 days to respond to him.

12           THE COURT:  Correct.  What is 22 days?

13           MR. POWERS:  22 days from today is the 28th.

14           MR. POSSIDENTE:  Which is Memorial Day, I think.

15           MR. POWERS:  Which, if he got me the papers today, I

16  doubt I would be able to do anyway.

17           THE COURT:  Certainly not.  And I'm not trying to do

18  anything extraordinary.  By now I would think that you probably

19  can make your motion a day earlier.

20           MR. POSSIDENTE:  File my papers on the 19th?

21           THE COURT:  Serve them, not file them.

22           MR. POSSIDENTE:  Serve them on the 19th.

23           THE COURT:  Then you will respond by no later than the

24  21st.  That will be the return date.  I will hear oral argument

25  on the 21st at 11:00.  That's what we will to.  I will hear you

1    on the 21st of May.

2              MR. POSSIDENTE:  At 11:30, your Honor?

3              THE COURT:  At 11:30.  Your notice has to be served by

4    whatever I have on my rules there, notice of motion.

5              MR. POSSIDENTE:  As I understand it, I'm to serve my

6    brief and 56.1 on the 19th, he is to oppose on the 21st, and we

7    are to appear for argument on the 21st as well at 11:30?

8              THE COURT:  No.  There is something wrong.  He has a

9    week to respond.

10             MR. POWERS:  I would have to respond by the 14th of

11   June.

12             THE COURT:  How long from now is the 14th of May?

13             MR. POWERS:  The 14th of may is next week.

14             MR. POSSIDENTE:  It's just nine days, eight days.

15             THE COURT:  Then you are going to have it returnable

16   on the 21st.  I can make it returnable on the 27th.  I want to

17   hear oral argument.  It's been so dilatory that it is

18   disturbing to have to put it over more.  But since my rules are

19   really based on the notion that I hear motions on Thursdays --

20   I'm shown that you have to make it returnable on June 4th.

21   That's when I will hear oral argument, on June 4th at 11:30.

22   The responsive papers have to be filed by the 21st of May.

23             MR. POSSIDENTE:  So we should file on May 15, your

24   Honor?

25             THE COURT:  Yes, you should file your motion on May

1    15th, Thursday.  You may serve and file your papers on May

2    15th.  The motion should be returnable on Thursday, June 4th.

3    The responsive papers should be served and filed by the 22nd.

4    I will hear oral argument on June 4th.

5              MR. POWERS:  The problem with that date, your Honor,

6    is that technically under your rules I'm supposed to get 15

7    days to respond, and that's only seven days.

8              THE COURT:  No, it's not, it's twice seven.

9              MR. POWERS:  No.  He is filing on the 15th.  The 22nd

10   is seven days after the 15th.  My response would be May 30th.

11   If you want to hear it on the 4th, my papers would be due a

12   week before that.

13             THE COURT:  Yes.  The week before the 4th of June

14   would be May 28th.

15             MR. POWERS:  Technically, he should give me the papers

16   by the 13th.

17             MR. POSSIDENTE:  Your Honor, the problem with that

18   becomes it starts to short-change me, who has not been the

19   dilatory party here.

20             THE COURT:  That's quite right.

21             MR. POSSIDENTE:  I have been the party here who has

22   complied with and followed the rules.  To the extent that there

23   is going to be a short-changing on papers here, it should not

24   go to the defendants.

25             THE COURT:  I agree.  In any event, it is not short-

1   changing.  You are going to make your motion returnable on June

2   4th at 11:30 in the morning.

3          MR. POSSIDENTE:  OK.

4          THE COURT:  May 15th should be when your motion is

5   made, the plaintiff must respond by May 29th, and I will hear

6   both of you on the 4th of June.  That gives everybody the

7   amount of time they should have under my rules more or less.

8   You are actually getting more time than my rules provide.

9          MR. POWERS:  Actually, I'm getting a day less, but I

10  don't have a problem with that.

11         THE COURT:  Good.  That's what we will do.  You will

12  both file your papers in accordance with that.  Let's review

13  the bidding.  Let's make sure you know when you are due.

14         MR. POSSIDENTE:  We are filing our opening brief and

15  56.1 on the 15th.  Plaintiff will file on the 29th.  And we

16  will appear for oral argument on June 4th.

17         THE COURT:  Excellent.  I look forward to receiving

18  your papers.  Although, the truth is I should dismiss for

19  failure to prosecute.

20         MR. POSSIDENTE:  We agree, for what it is worth.

21         THE COURT:  It is very troublesome when a plaintiff

22  sues and then just disappears, which is what happened here.

23  Good luck to everybody.

24         (Adjourned)

25

# Exhibit B

# ZARO'S BREAD BASKET

114475

112920

## PERSONNEL PROFILE SHEET

G14

| | FOR OFFICE USE ONLY |
|---|---|
| Store _2T_ #41ST Date _7-25-07_ | I.D. # _14026_ |
| | for p/r use only |

Requested by _Madalena Camporiello_ Approved by _____

Manager                               Supervisor

Employee's Name _Louis Rivera_                    S.S. # ████████

## EMPLOYMENT DATA

Address ███████████         Phone # ███████████

Birth Date _____ Date Hired _7-23-07_ Job Title _Commissary Manager_

☒ Day Shift  ☐ Night Shift  ☐ Part time ☒ Full time  Hrly ____ Wk ____  ☒ Salary _Please call John_ $850 wk

In case of emergency:   Name _Adele Rivera_      Phone # ____

Attach
☐ W4
☐ I9
☐ Polygraph Waiver
☐ Rules & Regulations    ☒ Male ☐ Female ☐ Caucasian ☐ Hispanic ☐ Asian ☐ American Indian ☐ Black ☐ Other
☐ Application
☐ Working Papers

Address _Same as above_

Relation _Wife_

## CHANGE NOTICE

Transfer: From _____ To _____                      ENTERED

Salary: Present _____ Increase _____ Hourly _____ F/T ☒ F/T  Salary 07/31/07

Job Title: From _____ To _____

Home Address _____                    Phone # _____

Effective Date _____ Change of Withholding Status _____

## DEDUCTIONS

Tee Shirts _____ Badges _____ Aprons _____ Hats _____

## LEAVE TIME

Check Appropriate Box:

☐ Funeral                              ☐ Sick Days (If available, attach Dr note)

☐ Jury Duty                            ☐ Vacation

☐ Personal Holiday

Day(s) Taken _____ Week(s) Taken _____ (week ending date)

## TERMINATION

Check one:

☐ Lay Off                              ☐ Warnings Issued

☐ Retirement                           Eligible for Rehire ☐ Yes ☐ No

☐ Voluntary Resignation                _____ Effective Date

☐ Discharged-Reason(Attach Report)

DEPOSITION EXHIBIT 10-8-13

ANJOST000270

PRINGAD 800-851-6989

CONFIDENTIAL

**A40**

# Exhibit C

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|-----------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 31-1 | 08/03/2007 | 07/29/2007 | G14 | | 850.00 | 609.75 | 00347534 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 850.00 |



Gross Pay                                                  $850.00

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -133.22 |
| | Medicare | -12.33 |
| | Social Security | -52.70 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -41.40 |

Net Pay                                                    $609.75



DEPOSITION
EXHIBIT 7
10·8·13

CONFIDENTIAL                                               ANJOST000255

**Earnings Statement**
**Louis Rivera**

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 32-1 | 08/10/2007 | 08/05/2007 | G14 | | 850.00 | 676.22 | 00347837 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 850.00 |

Gross Pay                                                          850.00

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -70.05 |
| | Medicare | -12.32 |
| | Social Security | -52.70 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -38.11 |

Net Pay                                                            $676.22

CONFIDENTIAL

ANJOST000254

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 33-1 | 08/17/2007 | 08/12/2007 | G14 | | 850.00 | 676.21 | 00348161 | Check | |

| Earnings | | | Rate | Hours | This Period |
|----------|--|--|------|-------|-------------|
| Regular | | | | | 850.00 |

Gross Pay $850.00

| Deductions | | Statutory | |
|------------|--|-----------|--|
| | | Federal Income Tax | -70.05 |
| | | Medicare | -12.33 |
| | | Social Security | -52.70 |
| | | 19 SUI/SDI | -0.60 |
| | | NY Worked In State Income Tax | -38.11 |

Net Pay $676.21

CONFIDENTIAL

ANJOST000253

**Earnings Statement**
Louis Rivera



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 34-1 | 08/24/2007 | 08/19/2007 | G14 | | 850.00 | 676.22 | 00348473 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 850.00 |

Gross Pay 850.00

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -70.05 |
| | Medicare | -12.32 |
| | Social Security | -52.70 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -38.11 |

Net Pay 676.22

CONFIDENTIAL                                                    ANJOST000252

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 35-1 | 08/31/2007 | 08/26/2007 | G14 | | 850.00 | 676.21 | 00348787 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 850.00 |

| Gross Pay | 850.00 |
|-----------|--------|

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -70.05 |
| | Medicare | -12.33 |
| | Social Security | -52.70 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -38.11 |

| Net Pay | 676.21 |
|---------|--------|

CONFIDENTIAL

ANJOST000251

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 36-1 | 09/07/2007 | 09/02/2007 | G14 | | 850.00 | 676.22 | 00349101 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 850.00 |

Gross Pay $850.00

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -70.05 |
| | Medicare | -12.32 |
| | Social Security | -52.70 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -38.11 |

Net Pay $676.22

CONFIDENTIAL

ANJOST000250

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 37-1 | 09/14/2007 | 09/09/2007 | G14 | | 850.00 | 676.21 | 00349428 | Check | |

| Earnings | | | | Rate | Hours | This Period |
|----------|--|--|--|------|-------|-------------|
| Regular | | | | | | 850.00 |

Gross Pay ████████████ 850.00

| Deductions | | Statutory | |
|------------|--|-----------|--|
| | | Federal Income Tax | -70.05 |
| | | Medicare | -12.33 |
| | | Social Security | -52.70 |
| | | 19 SUI/SDI | -0.60 |
| | | NY Worked In State Income Tax | -38.11 |

Net Pay ████████████ 676.21

CONFIDENTIAL

ANJOST000249

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 38-1 | 09/21/2007 | 09/16/2007 | G14 | | 850.00 | 676.22 | 00349743 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 850.00 |

Gross Pay $850.00

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -70.05 |
| | Medicare | -12.32 |
| | Social Security | -52.70 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -38.11 |

Net Pay $676.22

CONFIDENTIAL                                    ANJOST000248

**Earnings Statement**
**Louis Rivera**

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|-----------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 39-1 | 09/28/2007 | 09/23/2007 | G14 | | 850.00 | 676.21 | 00350072 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 850.00 |

Gross Pay $850.00

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -70.05 |
| | Medicare | -12.33 |
| | Social Security | -52.70 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -38.11 |

Net Pay $676.21

CONFIDENTIAL

ANJOST000247

# Exhibit D

# ZARO'S BREAD BASKET

### PERSONNEL PROFILE SHEET

*112990*

| FOR OFFICE USE ONLY |
| --- |
| I.D. # _____ |
| for p/r use only |

Store _____ Date _____

Requested by _____ Approved by _____
    Manager                          Supervisor

Employee's Name _Louis Rivera_ _____ S.S. # _____

## EMPLOYMENT DATA

Address _____ Phone # _____

Birth Date _____ Date Hired _____ Job Title _____

☐ Day Shift   ☐ Night Shift   ☐ Part time   ☐ Full time   Hrly _____ Wk _____ Salary _____

In case of emergency:   Name _____ Phone # _____

**Attach**
☐ W4                Address _____
☐ I9
☐ Polygraph Waiver   Relation _____
☐ Rules & Regulations   ☐ Male   ☐ Female   ☐ Caucasion   ☐ Hispanic   ☐ Asian   ☐ American Indian   ☐ Black   ☐ Other
☐ Application
☐ Working Papers

## CHANGE NOTICE

Transfer: From _____ To _____

Salary: Present _1207_ Increase _170_ Hourly _____ F/T _____ P/T _____ Salary _1377_

Job Title: From _____ To _____

Home Address _____ Phone # _____

Effective Date _____ Change of Withholding Status _____

## DEDUCTIONS

Tee Shirts _____ Badges _____ Aprons _____ Hats _____

## LEAVE TIME

Check Appropriate Box:
☐ Funeral          _As per Zaro_          ☐ Sick Days (If available, attach Dr.'s note)
☐ Jury Duty        _Brian Zaro_
                   _Approved_              ☐ Vacation
☐ Personal Holiday  _by Joe Zaro_

Day(s) Taken _____ Week(s) Taken _____ (week ending date)

## TERMINATION

Check one:       _effective_
                 _2/1/11_
☐ Lay Off                                 ☐ Warnings Issued
☐ Retirement                              Eligible for Rehire: ☐ Yes   ☐ No
☐ Voluntary Resignation                   _____ Effective Date
☐ Discharged-Reason(Attach Report)

CONFIDENTIAL                                    ANJOST000282

DEPOSITION EXHIBIT 10

10-8-13

PENGAD 800-631-6989

# Exhibit E

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 40-1 | 10/05/2007 | 09/30/2007 | G14 | | 1,097.00 | 850.36 | 00350415 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,097.00 |
| | | Gross Pay | $1,097.00 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -107.10 |
| | Medicare | -15.90 |
| | Social Security | -68.01 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -55.03 |
| | Net Pay | $850.36 |



DEPOSITION EXHIBIT 8
PENGAD 800-631-6989
10·8·13

CONFIDENTIAL

ANJOST000246

**Earnings Statement**
**Louis Rivera**
[redacted]

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 41-1 | 10/12/2007 | 10/07/2007 | G14 | | 1,097.00 | 850.34 | 00351087 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,097.00 |
| Gross Pay | | | $1,097.00 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -107.10 |
| | Medicare | -15.91 |
| | Social Security | -68.02 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -55.03 |
| | Net Pay | $850.34 |

**Earnings Statement**
Louis Rivera



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 42-1 | 10/19/2007 | 10/14/2007 | G14 | | 1,097.00 | 850.36 | 00351412 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,097.00 |
| Gross Pay | | | $1,097.00 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -107.10 |
| | Medicare | -15.90 |
| | Social Security | -68.01 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -55.03 |
| | Net Pay | $850.36 |

CONFIDENTIAL

ANJOST000244

**Earnings Statement**
Louis Rivera



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|-----------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 43-1 | 10/26/2007 | 10/21/2007 | G14 | | 1,097.00 | 850.34 | 00351744 | Check | |

| Earnings | | Rate | Hours | This Period |
|----------|--|------|-------|-------------|
| Regular | | | | 1,097.00 |
| | | | Gross Pay | $1,097.00 |

| Deductions | | |
|------------|--|--|
| | Statutory | |
| | Federal Income Tax | -107.10 |
| | Medicare | -15.91 |
| | Social Security | -68.02 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -55.03 |
| | Net Pay | $850.34 |

CONFIDENTIAL

ANJOST000243

**Earnings Statement**
**Louis Rivera**

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 44-1 | 11/02/2007 | 10/28/2007 | G14 | | 1,097.00 | 850.35 | 00352065 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,097.00 |

Gross Pay $1097.00

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -107.10 |
| | Medicare | -15.91 |
| | Social Security | -68.01 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -55.03 |

Net Pay $850.35

CONFIDENTIAL

ANJOST000242

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|-----------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 45-1 | 11/09/2007 | 11/04/2007 | G14 | | 1,097.00 | 850.36 | 00352390 | Check | |

| Earnings | | | Rate | Hours | This Period |
|----------|--|--|------|-------|-------------|
| Regular | | | | | 1,097.00 |

Gross Pay $1,097.00

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -107.10 |
| | Medicare | -15.90 |
| | Social Security | -68.01 |
| | 19 SUI/SDI | -0.80 |
| | NY Worked In State Income Tax | -55.03 |

Net Pay $850.36

CONFIDENTIAL

ANJOST000241

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 46-1 | 11/16/2007 | 11/11/2007 | G14 | | 1,097.00 | 850.34 | 003527183 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,097.00 |
| Gross Pay | | | $1,097.00 |

| Deductions | Statutory | |
|------------|-----------|------|
| | Federal Income Tax | -107.10 |
| | Medicare | -15.91 |
| | Social Security | -68.02 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -55.03 |
| | Net Pay | $850.34 |

CONFIDENTIAL

ANJOST000240

**Earnings Statement**

Louis Rivera



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 47-1 | 11/23/2007 | 11/18/2007 | G14 | | 1,097.00 | 850.35 | 00353043 | Check | |

| Earnings | | | Rate | Hours | This Period |
|----------|--|--|------|-------|-------------|
| Regular | | | | | 1,097.00 |

Gross Pay $1,097.00

| Deductions | | Statutory | |
|------------|--|-----------|--|
| | | Federal Income Tax | -107.10 |
| | | Medicare | -15.91 |
| | | Social Security | -68.01 |
| | | 19 SUI/SDI | -0.60 |
| | | NY Worked In State Income Tax | -55.03 |

Net Pay $850.35

CONFIDENTIAL

ANJOST000239

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 48-1 | 11/30/2007 | 11/25/2007 | G14 | | 1,316.40 | 1,005.03 | 00353372 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,097.00 |
| Holiday | | 0.00 | 219.40 |
| Gross Pay | | | $1,316.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -140.01 |
| | Medicare | -19.08 |
| | Social Security | -81.62 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -70.06 |
| | Net Pay | $1,005.03 |

CONFIDENTIAL

ANJOST000238

**Earnings Statement**
**Louis Rivera**

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 49-1 | 12/07/2007 | 12/02/2007 | G14 | | 1,097.00 | 850.35 | 00353701 | Check | |

| Earnings | | | Rate | Hours | This Period |
|----------|--|--|------|-------|-------------|
| Regular | | | | | 1,097.00 |

Gross Pay $1,097.00

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -107.10 |
| | Medicare | -15.91 |
| | Social Security | -68.01 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked in State Income Tax | -55.03 |

Net Pay $850.35

CONFIDENTIAL

ANJOST000237

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 50-1 | 12/14/2007 | 12/09/2007 | G14 | | 1,097.00 | 850.34 | 00354024 | Check | |

| Earnings | | | Rate | Hours | This Period |
|----------|--|--|------|-------|-------------|
| Regular | | | | | 1,097.00 |
| | | | | Gross Pay | $1097.00 |

| Deductions | | Statutory | | |
|------------|--|-----------|--|--|
| | | Federal Income Tax | | -107.10 |
| | | Medicare | | -15.91 |
| | | Social Security | | -68.02 |
| | | 19 SUI/SDI | | -0.60 |
| | | NY Worked In State Income Tax | | -55.03 |
| | | Net Pay | | $850.34 |

CONFIDENTIAL

ANJOST000236

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 51-1 | 12/21/2007 | 12/16/2007 | G14 | | 1,316.40 | 1,005.03 | 00354349 | Check | |

| Earnings | | Rate | Hours | This Period |
|----------|--|------|-------|-------------|
| Regular | | | | 1,097.00 |
| Blank | | | 0.00 | 219.40 |
| | | Gross Pay | | $1,316.40 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -140.01 |
| | Medicare | -19.09 |
| | Social Security | -81.61 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -70.06 |
| | Net Pay | $1,005.03 |

CONFIDENTIAL

ANJOST000235

# Exhibit F

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 31-1 | 08/01/2008 | 07/27/2008 | G14 | | 1,448.40 | 1,098.86 | 00364774 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| | | **Gross Pay** | **$1,448.40** |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.00 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | **Net Pay** | **$1,098.86** |



CONFIDENTIAL

ANJOST000203

**Earnings Statement**
Louis Rivera



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 32-1 | 08/08/2008 | 09/03/2008 | G14 | | | 1,448.40 | 1,098.86 | 00365103 | Check | |

| Earnings | | | Rate | Hours | This Period |
|---|---|---|---|---|---|
| Regular | | | | | 1,207.00 |
| Blank | | | | 0.00 | 241.40 |
| **Gross Pay** | | | | | **$1,448.40** |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.00 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | **Net Pay** | **$1,098.86** |

CONFIDENTIAL

ANJOST000202

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 33-1 | 08/15/2008 | 08/10/2008 | G14 | | 1,448.40 | 1,098.86 | 00365435 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| Gross Pay | | | $1,448.40 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.00 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | Net Pay | $1,098.86 |

CONFIDENTIAL

ANJOST000201

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Vold |
|----|-------|-----|----------|-----------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 34-1 | 08/22/2008 | 08/17/2008 | G14 | | 1,448.40 | 1,098.86 | 00365770 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| **Gross Pay** | | | **$1,448.40** |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.00 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | **Net Pay** | **$1,098.86** |

CONFIDENTIAL

ANJOST000200

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 35-1 | 08/29/2008 | 08/24/2008 | G14 | | 1,448.40 | 1,098.86 | 00366100 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| Gross Pay | | | $1,448.40 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.00 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | Net Pay | $1,098.86 |

CONFIDENTIAL

ANJOST000199

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 36-1 | 09/05/2008 | 08/31/2008 | G14 | | 1,448.40 | 1,098.85 | 00366423 | Check | |

| Earnings | | | Rate | Hours | This Period |
|----------|--|--|------|-------|-------------|
| Regular | | | | | 1,207.00 |
| Blank | | | | 0.00 | 241.40 |
| | | | Gross Pay | | $1,448.40 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.01 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | Net Pay | $1,098.85 |

CONFIDENTIAL

**Earnings Statement**

**Louis Rivera**

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 37-1 | 09/12/2008 | 09/07/2008 | G14 | | 1,689.80 | 1,252.28 | 00366736 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| Holiday | | 0.00 | 241.40 |
| Gross Pay | | | |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -212.02 |
| | Medicare | -24.50 |
| | Social Security | -104.77 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -95.63 |
| | Net Pay | |

CONFIDENTIAL

ANJOST000197

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 38-1 | 09/19/2008 | 09/14/2008 | G14 | | 1,448.40 | 1,098.86 | 00367061 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| Gross Pay | | | 1,448.40 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.00 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | Net Pay | $1,098.86 |

CONFIDENTIAL

ANJOST000196

**Earnings Statement**

Louis Rivera

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 39-1 | 09/26/2008 | 09/21/2008 | G14 | | 1,448.40 | 1,098.86 | 00367367 | Check | |

| Earnings | | Rate | Hours | This Period |
|----------|--|------|-------|-------------|
| Regular | | | | 1,207.00 |
| Blank | | | 0.00 | 241.40 |
| Gross Pay | | | | $1,448.40 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -169.04 |
| | Medicare | -21.00 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | Net Pay | $1,098.86 |

CONFIDENTIAL

ANJOST000195

**Earnings Statement**
**Louis Rivera**

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 40-1 | 10/03/2008 | 09/28/2008 | G14 | | 1,207.00 | 928.68 | 00367711 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Gross Pay | | | 1,207.00 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -122.83 |
| | Medicare | -17.50 |
| | Social Security | -74.83 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -62.56 |
| | Net Pay | $928.68 |

CONFIDENTIAL

ANJOST000194

**Earnings Statement**

**Louis Rivera**

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 41-1 | 10/10/2008 | 10/05/2008 | G14 | | 1,448.40 | 1,098.84 | 00368029 | Check | |

| Earnings | | Rate | Hours | This Period |
|----------|--|------|-------|-------------|
| Regular | | | | 1,207.00 |
| Blank | | | 0.00 | 241.40 |
| **Gross Pay** | | | | **$1,448.40** |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.01 |
| | Social Security | -89.81 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | **Net Pay** | **$1,098.84** |

CONFIDENTIAL

ANJOST000193

**Earnings Statement**

**Louis Rivera**

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|-----------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 42-1 | 10/17/2008 | 10/12/2008 | G14 | | 1,448.40 | 1,098.86 | 00368345 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| Gross Pay | | | $1,448.40 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.00 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | Net Pay | $1,098.86 |

CONFIDENTIAL

ANJOST000192

**Earnings Statement**
**Louis Rivera**

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 43-1 | 10/24/2008 | 10/19/2008 | G14 | | 1,448.40 | 1,098.86 | 00368662 | Check | |

| Earnings | | Rate | Hours | This Period |
|---|---|---|---|---|
| Regular | | | | 1,207.00 |
| Blank | | 0.00 | | 241.40 |
| | | | Gross Pay | $1,448.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.00 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.80 |
| | NY Worked In State Income Tax | -79.10 |
| | Net Pay | $1,098.86 |

CONFIDENTIAL

ANJOST000191

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|-----------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 44-1 | 10/31/2008 | 10/26/2008 | G14 | | 1,689.80 | 1,252.29 | 00368991 | Check | |

| Earnings | | | Rate | Hours | This Period |
|----------|---|---|------|-------|-------------|
| Regular | | | | | 1,207.00 |
| Blank | | | | 0.00 | 482.80 |
| | | | | Gross Pay | $1,689.80 |

| Deductions | | Statutory | | |
|-----------|---|-----------|---|---|
| | | Federal Income Tax | | -212.02 |
| | | Medicare | | -24.50 |
| | | Social Security | | -104.76 |
| | | 19 SUI/SDI | | -0.60 |
| | | NY Worked In State Income Tax | | -95.63 |
| | | Net Pay | | $1,252.29 |

CONFIDENTIAL

ANJOST000190

**Earnings Statement**

**Louis Rivera**

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 45-1 | 11/07/2008 | 11/02/2008 | G14 | | 1,448.40 | 1,098.85 | 00369321 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| **Gross Pay** | | | **$1,448.40** |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Federal Income Tax | | -159.04 |
| | Medicare | | -21.00 |
| | Social Security | | -89.81 |
| | 19 SUI/SDI | | -0.60 |
| | NY Worked In State Income Tax | | -79.10 |
| | **Net Pay** | | **$1,098.85** |

CONFIDENTIAL

ANJOST000189

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|-----------|-----------|---|-----------|---------|---------|---------|------|
| UF- | 112990 | 46-1 | 11/14/2008 | 11/09/2008 | G14 | | | 1,448.40 | 1,098.86 | 00389658 | Check | |

| Earnings | | | | Rate | Hours | This Period |
|----------|---|---|---|------|-------|-------------|
| Regular | | | | | | 1,207.00 |
| Blank | | | | | 0.00 | 241.40 |
| | | | | | Gross Pay | $1,448.40 |

| Deductions | | Statutory | | |
|------------|---|-----------|---|---|
| | | Federal Income Tax | | -159.04 |
| | | Medicare | | -21.00 |
| | | Social Security | | -89.80 |
| | | 19 SUI/SDI | | -0.60 |
| | | NY Worked In State Income Tax | | -79.10 |
| | | | Net Pay | $1,098.86 |

CONFIDENTIAL

ANJOST000188

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 47-1 | 11/21/2008 | 11/16/2008 | G14 | | 1,448.40 | 1,098.85 | 00369997 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| Gross Pay | | | 1,448.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.01 |
| | Social Security | -89.80 |
| | 18 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | Net Pay | 1,098.85 |

CONFIDENTIAL

ANJOST000187

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 48-1 | 11/28/2008 | 11/23/2008 | G14 | | 1,689.80 | 1,252.29 | 00370338 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 482.80 |
| Gross Pay | | | $1,689.80 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -212.02 |
| | Medicare | -24.50 |
| | Social Security | -104.76 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -95.63 |
| | Net Pay | $1,252.29 |

CONFIDENTIAL

ANJOST000186

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|-----------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 49-1 | 12/05/2008 | 11/30/2008 | G14 | | 1,689.80 | 1,252.28 | 00370678 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| Holiday | | 0.00 | 241.40 |
| Gross Pay | | | $1,689.80 |

| Deductions | Statutory | |
|-----------|-----------|---|
| | Federal Income Tax | -212.02 |
| | Medicare | -24.50 |
| | Social Security | -104.77 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -95.63 |
| | Net Pay | $1,252.28 |

CONFIDENTIAL

ANJOST000185

**Earnings Statement**
Louis Rivera



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 50-1 | 12/12/2008 | 12/07/2008 | G14 | | 1,448.40 | 1,098.86 | 00371014 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| Gross Pay | | | $1,448.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.00 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | Net Pay | $1,098.86 |

CONFIDENTIAL

ANJOST000184

**Earnings Statement**

**Louis Rivera**

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 51-1 | 12/19/2008 | 12/14/2008 | G14 | | 1,448.40 | 1,098.86 | 00371347 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,207.00 |
| Blank | | 0.00 | 241.40 |
| Gross Pay | | | $1,448.40 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -159.04 |
| | Medicare | -21.00 |
| | Social Security | -89.80 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -79.10 |
| | Net Pay | $1,098.86 |

CONFIDENTIAL

ANJOST000183

# Exhibit G

### Earnings Statement
Louis Rivera



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 05-1 | 02/04/2011 | 01/30/2011 | G14 | | 1,652.40 | 1,274.87 | 00406468 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,377.00 |
| Sick Day | | 0.00 | 275.40 |
| Gross Pay | | | $1,652.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |



CONFIDENTIAL

ANJOST000070

**Earnings Statement**
Louis Rivera



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 06-1 | 02/11/2011 | 02/06/2011 | G14 | | 1,652.40 | 1,274.87 | 00406804 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | $1,652.40 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.98 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

CONFIDENTIAL

ANJOST000069

**Earnings Statement**
Louis Rivera



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 07-1 | 02/18/2011 | 02/13/2011 | G14 | | 1,652.40 | 1,274.86 | 00407137 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | $1,652.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.41 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.86 |

CONFIDENTIAL

ANJOST000068

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 08-1 | 02/25/2011 | 02/20/2011 | G14 | | 1,652.40 | 1,274.87 | 00407472 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | $1,652.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

CONFIDENTIAL

ANJOST000067

**Earnings Statement**

Louis Rivera

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 09-1 | 03/04/2011 | 02/27/2011 | G14 | | 1,652.40 | 1,274.87 | 00407800 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | 1,652.40 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | 1,274.87 |

CONFIDENTIAL

ANJOST000066

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 10-1 | 03/11/2011 | 03/06/2011 | G14 | | 1,652.40 | 1,274.87 | 00408147 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | $1,652.40 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

CONFIDENTIAL

ANJOST000065

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|-----------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 11-1 | 03/18/2011 | 03/13/2011 | G14 | | 1,652.40 | 1,274.87 | 00408473 | Check | |

| Earnings | | Rate | Hours | This Period |
|----------|--|------|-------|-------------|
| Regular | | | | 1,377.00 |
| Blank | | | 0.00 | 275.40 |
| Gross Pay | | | | 1,652.40 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

CONFIDENTIAL

ANJOST000064

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 12-1 | 03/25/2011 | 03/20/2011 | G14 | | 1,652.40 | 1,274.87 | 00408799 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | $1,652.40 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | t9 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

CONFIDENTIAL

ANJOST000063

**Earnings Statement**

Louis Rivera



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 13-1 | 04/01/2011 | 03/27/2011 | G14 | | 1,652.40 | 1,274.87 | 00409125 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | $1,652.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

CONFIDENTIAL

ANJOST000062

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 14-1 | 04/08/2011 | 04/03/2011 | G14 | | 1,852.40 | 1,274.87 | 00409451 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | $1,852.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

CONFIDENTIAL

ANJOST000061

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|---|-----------|---------|---------|---------|------|
| UF- | 112990 | 15-1 | 04/15/2011 | 04/10/2011 | G14 | | | 1,652.40 | 1,274.87 | 00409776 | Check | |

| Earnings | | | Rate | Hours | This Period |
|----------|---|---|------|-------|-------------|
| Regular | | | | | 1,377.00 |
| Blank | | | | 0.00 | 275.40 |
| | | | Gross Pay | | $1,652.40 |

| Deductions | | Statutory | | |
|------------|---|-----------|---|---|
| | | Federal Income Tax | | -190.50 |
| | | Medicare | | -23.96 |
| | | Social Security | | -69.40 |
| | | 19 SUI/SDI | | -0.60 |
| | | NY Worked In State Income Tax | | -93.07 |
| | | Net Pay | | $1,274.87 |

CONFIDENTIAL

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 16-1 | 04/22/2011 | 04/17/2011 | G14 | | 1,652.40 | 1,274.87 | 00410105 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| GROSS PAY | | | 1,652.40 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | NET PAY | 1,274.87 |

CONFIDENTIAL

ANJOST000059

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 17-1 | 04/29/2011 | 04/24/2011 | G14 | | 1,652.40 | 1,274.87 | 00410431 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | 1,652.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | 1,274.87 |

CONFIDENTIAL

ANJOST000058

**Earnings Statement**

Louis Rivera



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 18-1 | 05/06/2011 | 05/01/2011 | G14 | | 1,652.40 | 1,274.87 | 00410753 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | 1,652.40 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | 1,274.87 |

CONFIDENTIAL

ANJOST000057

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Vold |
|----|-------|-----|----------|------------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 19-1 | 05/13/2011 | 05/08/2011 | G14 | | 1,927.80 | 1,446.88 | 00411080 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 550.80 |
| Gross Pay | | | $1,927.80 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -259.35 |
| | Medicare | -27.95 |
| | Social Security | -80.97 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -112.05 |
| | Net Pay | $1,446.88 |

CONFIDENTIAL

ANJOST000056

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 20-1 | 05/20/2011 | 05/15/2011 | G14 | | 1,652.40 | 1,274.87 | 00411395 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | $1,652.40 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

CONFIDENTIAL

ANJOST000055

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 21-1 | 05/27/2011 | 05/22/2011 | G14 | | 1,652.40 | 1,274.87 | 00411713 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | $1,652.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|--|-----------|---------|---------|---------|------|
| UF- | 112990 | 22-1 | 06/03/2011 | 05/29/2011 | G14 | | | 1,652.40 | 1,274.87 | 00412033 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | 1,652.40 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | 1,274.87 |

CONFIDENTIAL

ANJOST000053

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 23-1 | 06/10/2011 | 06/05/2011 | G14 | | 1,927.80 | 1,446.87 | 00412359 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Holiday | | 0.00 | 275.40 |
| Gross Pay | | | $1,927.80 |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Income Tax | -259.35 |
| | Medicare | -27.96 |
| | Social Security | -80.97 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -112.05 |
| | Net Pay | $1,446.87 |

CONFIDENTIAL

ANJOST000052

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 24-1 | 06/17/2011 | 06/12/2011 | G14 | | | 1,652.40 | 1,274.87 | 00412684 | Check. | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | $1,652.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

CONFIDENTIAL

ANJOST000051

**Earnings Statement**

Louis Rivera

| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 25-1 | 06/24/2011 | 06/19/2011 | G14 | | 1,652.40 | 1,274.87 | 00413020 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | 1,652.40 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

CONFIDENTIAL

ANJOST000050

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 26-1 | 07/01/2011 | 06/26/2011 | G14 | | 1,652.40 | 1,274.87 | 00413346 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Gross Pay | | | 1,652.40 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.98 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1,274.87 |

CONFIDENTIAL

ANJOST000049

**Earnings Statement**
Louis Rivera




| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|----|-------|-----|----------|------------|------------|------------|-----------|---------|---------|---------|------|
| UF- | 112990 | 27-1 | 07/08/2011 | 07/03/2011 | G14 | | 1,652.40 | 1,274.87 | 00413673 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | 0.00 | | 275.40 |
| Gross Pay | | | $1,652.40 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | Net Pay | $1274.87 |

CONFIDENTIAL

ANJOST000048

**Earnings Statement**
**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Void |
|---|---|---|---|---|---|---|---|---|---|---|---|
| UF- | 112990 | 28-1 | 07/15/2011 | 07/10/2011 | G14 | | 1,927.80 | 1,446.88 | 00413999 | Check | |

| Earnings | Rate | Hours | This Period |
|---|---|---|---|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| Holiday | | 0.00 | 275.40 |
| Gross Pay | | | 1,927.80 |

| Deductions | Statutory | |
|---|---|---|
| | Federal Income Tax | -259.35 |
| | Medicare | -27.95 |
| | Social Security | -80.97 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked in State Income Tax | -112.05 |
| | Net Pay | 1,446.88 |

CONFIDENTIAL

ANJOST000047

**A112**

**Earnings Statement**

**Louis Rivera**



| Co | File# | Wk. | Pay Date | Period End | Paid Dept. | Paid Clock | Gross Pay | Net Pay | Check # | Chk/Vcr | Vold |
|----|-------|-----|----------|------------|-----------|-----------|-----------|---------|---------|---------|------|
| UF- | 112990 | 29-1 | 07/22/2011 | 07/17/2011 | G14 | | 1,652.40 | 1,274.87 | 00414321 | Check | |

| Earnings | Rate | Hours | This Period |
|----------|------|-------|-------------|
| Regular | | | 1,377.00 |
| Blank | | 0.00 | 275.40 |
| GROSS PAY | | | $1,652.40 |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Income Tax | -190.50 |
| | Medicare | -23.96 |
| | Social Security | -69.40 |
| | 19 SUI/SDI | -0.60 |
| | NY Worked In State Income Tax | -93.07 |
| | NET PAY | $1,274.87 |

CONFIDENTIAL

ANJOST000046

# Exhibit H



**New York State Department of Labor**
David A. Paterson, *Governor*
Colleen Gardner, *Commissioner*

December 7, 2010



Re:   Request for Opinion
      Salary Basis
      RO-10-0063

Dear ▆▆▆▆,

    This letter is written in response to your letter dated April 21, 2010, in which you inquire whether requiring an employee to use paid vacation, personal, or sick time off for partial day absences would affect that employees "exempt" status. Your letter states that salaried employees would be required to use accumulated leave time for partial days of absence and that once they have exhausted their vacation, personal, and sick leave, they would be paid their salary in full. Since your letter does not provide the specific factual basis under which your question arises, it is assumed that you are inquiring whether the practice of requiring salaried employees to utilize paid vacation, personal, and sick leave would violate the "salary" requirement for the State and federal administrative, professional, and executive exemptions/exceptions to the overtime requirements.

    The federal Fair Labor Standards Act and the regulations under the State Minimum Wage Act require that most employees be paid at least the federal minimum wage for all hours worked and overtime pay at time and one-half times their regular rate of pay for all hours worked over 40 hours in a workweek. However, these requirements are independent of each other and operate to provide both the U.S. Department of Labor and this Department authority over the enforcement of their respective provisions. It is important to note that the FLSA does not prevent states from enacting wage and overtime laws and regulations that are more beneficial to workers than the FLSA. (See, 29 U.S.C. §218; *Manliguez v. Joseph*, 226 F. Supp.2d 377 (EDNY 2002).)

Tel: (518) 457-4380, Fax: (518) 485-1819
W. Averell Harriman State Office Campus, Bldg. 12, Room 509, Albany, NY 12240

Regulations adopted pursuant to the New York State Minimum Wage Act do contain some overtime requirements that apply to employees who are otherwise exempt from overtime under the FLSA. In order to reach a determination as to whether a job falls under a permitted overtime exemption, the Department may examine both the FLSA and the more stringent provisions of the State Minimum Wage law and orders. Where the criteria in a New York State exception mirror those for an exemption in the FLSA, this Department usually construes the criteria in our regulations in line with those contained in the FLSA, its regulations, and interpretations by the U.S. Department of Labor. However, this Department is not bound by the decisions and interpretations of the U.S. Department of Labor, nor is that Department bound by this or other interpretations issued by this agency.

The New York State Minimum Wage Act generally applies to all individuals who fall within its definition of "employee." *(see,* Labor Law §651 *et seq.)* Section 651 (5) defines "employee" as "any individual employed or permitted to work by an employer in any occupation," but excludes fifteen categories of workers from that definition. *(see,* Labor Law §651(5)(a-o).) Subpart 2.2 of the Minimum Wage Order for Miscellaneous Industries and Occupations (12 NYCRR §142-2.2) provides, in relevant part, that all "employees" must be paid at a rate not less than one and one half times their regular rate of pay subject to the exemptions of the FLSA. Subpart 2.2 also provides that employees exempted under Section 13 of the FLSA must nevertheless be paid overtime but at a rate not less than one and one half times the minimum wage. As alluded to above, this requirement is independent of the overtime requirements contained in the FLSA, which are not incorporated by reference; rather they operate as independent and concurrent requirements for the payment of overtime.

As you appear to be aware, both the FLSA and the State Minimum Wage Act provide exemptions/exceptions from both minimum wage and overtime pay for individuals employed as bona fide executive, administrative, professional, and outside sales employees. To qualify for these exemptions/exceptions, employees generally must meet certain tests regarding their job duties and be paid on a salary basis. While the tests for job duties differ slightly between the FLSA and the State Minimum Wage Act, the State requirement that these employees be paid a salary, notwithstanding any differences in the threshold amount of that salary, is interpreted in line with the regulations explaining the FLSA salary requirement. Those requirements are explained in Federal regulation 29 CFR 541.600 *et seq.* and provide as follows:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. (29 CFR 541.602(a)

- 2 -

That regulation provides further that subject to several exceptions, "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." (29 CFR 541.602(a).)

As relevant to the present inquiry, regulation 29 CFR 651.602(b)(1) provides as follows:

> Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability. Thus, if an employee is absent for two full days to handle personal affairs, the employee's salaried status will not be affected if deductions are made from the salary for two full-day absences. However, if an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence.

Under these regulations reductions in pay for partial day absences violate the salary basis rule, except those occurring in the first or final week of an exempt employee's employment or for unpaid leave under the Family and Medical Leave Act. However, your letter merely states that the employer will require employees utilize their vacation, personal, or sick time for partial day absences and that employees who have exhausted such time will not be subject to any deductions from their pay for partial days worked. Assuming that the requirement to use vacation, personal, or sick leave time for partial day absences is properly enunciated in the employer's employee benefits policy in accordance with Section 198-c of the Labor Law, such a policy would not violate the salary basis rule since the employees in question would receive their full salary regardless of the number of hours worked.

This opinion is based exclusively on the facts and circumstances described in your email and subsequent communication, and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. This opinion cannot be used in connection with any pending private litigation concerning the issue addressed herein. If you have any further questions, please do not hesitate to contact me.

Very truly yours,
Maria L. Colavito, Counsel

By:

Michael Paglialonga
Assistant Attorney I

cc: Carmine Ruberto

- 3 -

# Exhibit I

Page 1

```
1                       L. Rivera
2            UNITED STATES DISTRICT COURT
3            SOUTHERN DISTRICT OF NEW YORK
4    ------------------------------------x
     LOUIS RIVERA,
5
                    Plaintiff,
6                                         Case No.
          vs.                             13-CV-379
7                                           (MGC)
     ANJOST CORPORATION and JOSEPH ZARO,
8
                    Defendants.
9    ------------------------------------x
10
11
12
13           DEPOSITION OF LOUIS RIVERA
14              New York, New York
15           Tuesday, October 8, 2013
16
17
18
19
20
21
22
23   Reported by:
24   THOMAS A. FERNICOLA, RPR
25   JOB NO. 66219
```

Page 2

1                          L. Rivera

2

3

4

5

6                   Tuesday, October 8, 2013

7                   10:00 a.m.

8

9

10

11          DEPOSITION of LOUIS RIVERA, held at the

12   Law Offices of Venable, LLP, 1270 Avenue of the

13   Americas, 24th Floor, New York, New York, before

14   Thomas A. Fernicola, a Registered Professional

15   Reporter and Notary Public of the State of New

16   York.

17

18

19

20

21

22

23

24

25

```
                                                              Page 3
 1                        L. Rivera
 2    A P P E A R A N C E S:
 3
 4            THE LAW OFFICE OF ROBERT S. POWERS
 5            Attorneys for Plaintiff
 6                 1540 August Road
 7                 North Babylon, New York  11703
 8
 9            BY:  ROBERT S. POWERS, ESQ.
10
11
12            VENABLE
13            Attorneys for Defendants
14                 1270 Avenue of the Americas
15                 New York, New York 10020
16
17            BY:  ADAM G. POSSIDENTE, ESQ.
18                 RAQUEL O. ALVARENGA, ESQ.
19
20
21
22
23
24
25
```

Page 12

L. Rivera

2   A.   Yes.

3   Q.   And this reflects a birthday of
4   7/20/1961.

5        Is that your birthday?

6   A.   Yes.

7   Q.   It reflects a hire date of
8   7/23/2007; is that correct?

9        Well, the document as written,
10  Mr. Rivera, we can agree that it reflects a
11  hire date of 7/23/2007?

12  A.   That's the day they say they hired
13  me, then that's the day they hired me.  I
14  remember it was July 4th.

15  Q.   Your job title, Mr. Rivera, was
16  Commissary Manager; is that correct?

17  A.   Yes.

18  Q.   And, Mr. Rivera, if we skip down
19  right below where it says Date Hired, it
20  says -- there's an X next to Full-Time
21  Employee; is that correct?

22  A.   Yes.  I was a full-time employee.

23  Q.   Mr. Rivera, it has emergency contact
24  here, Adell A. Rivera, your wife?

25  A.   That's my wife, yes, sir.

Page 68

L. Rivera

2    Q.    So the alleged inappropriate

3 behavior, Mr. Rivera, refers to the sexual

4 harassment allegations made by Ms. Nazia that

5 we were just discussing; is that correct?

6    A.    I think so.

7    Q.    And we can agree, then, Mr. Rivera,

8 that this reflects a suspension from May 17,

9 2012, until the completion of that

10 investigation?

11    A.    I think it was on a Tuesday or

12 something.

13    Q.    Well, let's refer back to, I guess

14 Exhibit 5, the first employee notice.  And

15 then this is the one dated May 16, 2012; is

16 that correct?

17    A.    Yes, 5/16.

18    Q.    5/16/2012.  And this is the document

19 that reflects the warning, correct, that you

20 were given a warning by Brian Zaro?

21    A.    Yes.

22    Q.    And then, again, this document is

23 dated 5/16/12; correct?

24    A.    Yes.

25    Q.    So the next day you knew then John

Page 69

L. Rivera

2  Apgar, based on -- if we refer back to

3  Exhibit 6, John Apgar then informed you that

4  you were being suspended pending an

5  investigation into the allegation?

6      A.    Into that, yes.

7      Q.    Mr. Rivera, how long did that

8  investigation last?

9      A.    Well, I was working.  He told me to

10  come to Grand Central and he told me that we

11  have to investigate this, so I have to suspend

12  you.

13            And he called me, I don't know when

14  it was, the date, Wednesday.  Then he called

15  me in the coming Monday.

16      Q.    So he informed you of the suspension

17  on a Wednesday?

18      A.    I think that's the date.  I'm not

19  sure.

20      Q.    And then he called you in --

21      A.    I was working.

22      Q.    You were working on that day?

23      A.    Yes.

24      Q.    How long did the suspension last,

25  Mr. Rivera?

Page 70

                         L. Rivera

1

2      A.    A couple of days.

3      Q.    Were you paid?

4      A.    Yes.

5      Q.    And what was the result of the

6   investigation?

7      A.    He told me to come in Monday morning

8   at 9:00 to Grand Central, where I met John

9   Apgar.  So he told me, let's go sit down with

10  Milton Carl and Brian Zaro right next to Track

11  19.  And we sat with them and I sat with them.

12        And they told me, due to the

13  investigation, I have to let you go.

14        And I said, John, you're letting me

15  go for no reason, and you guys know very well

16  that I would never do anything like this.  You

17  have a camera up there.

18        And, John, remember, I didn't

19  actually quit this job.  You gave me the job

20  and you think I'm going to turn around and

21  betray you.  You know that I'm right.  For

22  some reason this is thrown at me for no

23  reason.  I told him that.

24        And he says there is nothing he can

25  do.  So when Brian told me to sign a piece of

Page 71

1              L. Rivera

2    paper, another piece of paper, I said, I'm not

3    signing it.  You already caused me to sign two

4    papers.  I'm not going to sign whatever.

5    Maybe it was a termination piece of paper or

6    something.  I said I'm not going to sign it.

7              So he said, I'm going to pay you for

8    the week, I'm going to pay you for your

9    vacation and whatever else is coming to you.

10       Q.    And you were then terminated;

11   correct?

12       A.    Yes.

13       Q.    And so then we can agree, then,

14   Mr. Rivera, that following this suspension and

15   the investigation into the allegations brought

16   by Ms. Nazia, that the company terminated you

17   based on those allegations; correct?

18       A.    Yes.

19       Q.    Mr. Rivera, let's turn back to your

20   duties as a commissary manager.

21              We've already established that based

22   on Exhibit 4, that you were supervising

23   between 14 and 15 employees at any one time;

24   correct?

25       A.    Uh-huh.  Yes.

Page 72

L. Rivera

1

2      Q.      Given that you were the manager,

3  your primary duty was to supervise and manage

4  those employees; is that correct?

5      A.      Yes.

6      Q.      And you were responsible for

7  directing the work of the employees that you

8  managed; is that correct?

9      A.      Yes.

10      Q.      Do you recall the names of any of

11  the full-time employees that you were

12  responsible for managing and their job titles?

13      A.      They were all workers.   Sandwich

14  makers, that's what they were.

15      Q.      So what exactly does the commissary

16  do, Mr. Rivera?

17      A.      We make sandwiches for all the

18  stores.   We prepare salads for all the stores,

19  fruit salads, sandwiches, all that has to do

20  with the baker's side, bagels, danishes, to

21  provide all the stores with the product.

22      Q.      So, Mr. Rivera, can you describe the

23  day-to-day tasks that you were responsible for

24  managing?

25      A.      What do you mean by that?

Case 15-2143, Document 32, 10/19/2015, 1622734, Page130 of 199

Page 73

1                    L. Rivera

2        Q.     Take me through a normal day when

3    you were the manager of the commissary.

4        A.     I go in at 2:30 in the morning.

5    There's a fax that comes out of the machine

6    that tells you everything that the stores

7    need.

8             So I would take a rack and load up,

9    because we had a truck that comes in at 3:30

10   in the morning.  So I would have to load up

11   that truck before 3:30 in the morning or else

12   Zaro's would not get no equipment until 7:00.

13            So I take the fax.  The first thing

14   I do in there is take the fax of each store

15   and then take the bins and load up the bins

16   and put a piece of paper what store this

17   belongs to.

18            Anything that belongs to Grand

19   Central was picked up by Grand Central, but we

20   would set it up and they would pick it up from

21   Grand Central since it was around the corner.

22       Q.     What did the bins contain?

23       A.     Salads, anything that had to do with

24   the salad bar, like cucumbers, olives, bacon

25   bits, walnuts, canned goods, whatever the

Page 74

1                    L. Rivera

2    stores needed to prepare themselves.  And

3    that's their first shipment.

4           The soups, they would be loaded up

5    because they would deliver to 21st Street,

6    36th Street, the Bronx, I mean, yes.  The

7    Zaro's in Parkchester, 37th Street, and then

8    the Zaro's, some of the other stuff that they

9    ordered.

10        Q.    You testified that you started work

11   at 2:30?

12        A.    Uh-huh.

13        Q.    Did the individuals that you

14   supervised also start work at 2:30?

15        A.    No.  They start -- only the bakers

16   were there.  They go in at 12:00.

17        Q.    The bakers arrive at midnight?

18        A.    Yes.

19        Q.    Were you responsible for supervising

20   the bakers?

21        A.    Yes.  But when I go in, I said

22   hello, good morning to everybody, and then I

23   would get the fax, because they know I had

24   to -- they were baking for Grand Central and

25   21st Street, that gets picked up first.  But I

Page 75

1          L. Rivera

2    would let them know if they had extra stuff

3    that had to be made and I would tell them.

4        Q.    Okay.

5              When did the other employees that

6    you were supervising arrive?

7        A.    5:00.

8        Q.    So from 2:30 until 5:00, it was you

9    and the bakers?

10       A.    Uh-huh.

11       Q.    And then at 5:00, the other

12   sandwich --

13       A.    The employees would come in.

14       Q.    And what happened when they arrived?

15       A.    They start working.  They punch

16   their card and they start working.  And I

17   would tell them what to make, because I would

18   make a copy and paste it on the wall, and

19   everybody had a certain sandwich to make.

20       Q.    So you would, when the people

21   arrived at 5:00 and they punched in, you would

22   instruct all of them to make different

23   products?

24       A.    Right.  If they would look at the

25   sheet that I wrote, and each one of them would

Case 1:13-cv-00379-MGC   Document 11-9   Filed 05/15/15   Page 14 of 64

Page 76

1                      L. Rivera

2      pick out what they want to make.  Because

3      everything had to be ready before 7:30.

4          Q.    Okay.

5               Mr. Rivera, I just ask you let me

6      finish the question before you answer so that

7      the court reporter doesn't go crazy.

8               Once you had -- once 5:00 hit, the

9      workers arrived and you started, you got them

10     started on making various products, what

11     happened during the rest of your shift?

12         A.    Once we finished making the

13     sandwiches and everything?

14         Q.    Yes.

15         A.    We would prepare for the next day.

16         Q.    And what did that involve?

17         A.    Chopping vegetables, cooking

18     vegetables, making soups.

19         Q.    And, once again, you would instruct

20     the various employees as to their specific

21     tasks?

22         A.    Yes.  They knew already what they

23     had to be made and what we needed.  Like, say,

24     we made on Monday, we made 15 cans of roasted

25     peppers.

Case 1:13-cv-00379-MGC   Document 11-9   Filed 05/15/15   Page 15 of 64

Page 77

1           L. Rivera

2           So we look in the refrigerator and

3    we see, because we have buckets inside the

4    refrigerator.  If it was running short, we had

5    to refill it again to make sure that the next

6    day we had enough buckets to send them.

7           Q.   Mr. Rivera, how long -- how many

8    hours -- how long was your shift?

9           A.   My shift?

10          Q.   Yes.

11          A.   From 2:00 maybe to 1:00 or 2:00 in

12   the afternoon.

13          Q.   And what kind of decisions were you

14   responsible for making while you were the

15   commissary manager?

16          A.   Regarding what?

17          Q.   Were you given in terms of -- well,

18   let's ask it this way.  You would determine

19   yourself which employee would do which task

20   every day?

21          A.   They would pick what they wanted to

22   make, as long as everything was made on that

23   list.

24          Q.   So you would say to the employees

25   that you were supervising, you would say we

Case 15-2143, Document 32, 10/19/2015, 1622734, Page135 of 199

Page 78

1              L. Rivera

2    need to make X chicken sandwiches?

3        A.    Right.  And they had a list on the

4    wall that I paste, how many sandwiches, say,

5    they were making turkey and brie, I would add

6    all the stores what they had to make, you

7    know, of that particular sandwiches.

8              Say, it was 50, what store gets 20,

9    what store gets 10, what gets 20, because

10   everything came out in the platters.

11       Q.    Now, Mr. Rivera, as the manager, I

12   imagine that you would also make suggestions

13   or recommendations regarding the operation of

14   the commissary; is that right?

15       A.    I don't understand.

16       Q.    In terms of would you have a hand in

17   sort of setting out if there were better ways

18   to make a sandwich or better policies to more

19   efficiently push the product through, that

20   sort of thing, would you have a role in that?

21       A.    Yes.  They would know they have to

22   weigh the meat and put it on the sandwich and

23   wrap it up, tag it, and then put it in -- we

24   had different bins, one for 37, one for

25   21st Street, one for all the stores.  There

Case 15-2143, Document 32, 10/19/2015, 1622734, Page136 of 199

**A133**

Page 79

1              L. Rivera

2    was a bin with the number on it.

3           Like 37, we would write 37.  We

4    would write another one, 21st Street.  And

5    then each bin has a thing, so they would read

6    it.

7           Say, so 27 ordered 10 smoked turkey

8    and brie, then they would get the smoked

9    turkey and brie, the 10.  How many Grand

10   Central ordered, I would get the fax for all

11   of them.  So I would write down every morning

12   what they had -- how many they had to make.

13        Q.   Mr. Rivera, were you responsible for

14   making or for having a role in personnel

15   decisions that were made regarding the

16   commissary?

17        A.   In regarding?

18        Q.   Hiring.

19        A.   The hiring and firing, I used to

20   hire, but the people there, the agencies used

21   to send me a bunch of, you can say bums,

22   because they work one week, they don't show up

23   the next week.  So Brian says that for now on,

24   you hire somebody, I want to speak to them.

25        Q.   Okay.

Page 81

1                    L. Rivera

2     that Brian Zaro got involved?

3         A.    Yes.  Because some of the people

4     that I hired from the agency, they were giving

5     me problems.  So I would talk to Brian and,

6     Brian, this guy is not fitting in to the

7     program here, I'm getting yelled at, I'm

8     getting cursed at me.  And Brian would tell

9     me, let them go.  So I would let them go.

10        Q.    So, in addition, so with respect to

11    the termination of employees, you would go to

12    Brian and say, this employee isn't doing the

13    job properly, we need to let him go?

14        A.    Yes.  Or he is starting a fight back

15    there, anything, or whatever, because it was

16    an incident, what I got -- I told him to leave

17    and he started, he wanted to fight me.  He was

18    throwing things at me and, you know, I wasn't

19    going to attack him.  So I would tell him to

20    leave.  I had to call the police.

21        Q.    Do you remember this employee's

22    name?

23        A.    No.

24        Q.    But with respect to this employee

25    who started the fight, following that fight

Page 84

1                    L. Rivera

2       A.     Yes.

3       Q.     Okay.

4              And so you said that Brian -- I'm

5    sorry, were you done?

6       A.     No.

7       Q.     Okay.

8              I'm sorry.

9       A.     I was the manager of the commissary,

10   but I made -- wait a minute.  This is towards

11   the end.

12             Because when I hired Nazia, Nazia's

13   husband, he became my right-hand man when I'm

14   not there.  When the Zaro's called me to go to

15   37th Street or to go to Grand Central, I would

16   tell Nazia's uncle, please watch the store

17   while I'm gone.

18      Q.     Okay.

19             But Brian Zaro was not always there?

20      A.     No.

21      Q.     And John Apgar was not always there

22   either?

23      A.     No.

24      Q.     Okay.

25             So --

Page 90

L. Rivera

2  that period were $850, your regular earnings,

3  you see right under that it says Earnings?

4      A.    Yes.

5      Q.    And the rate and the hours are both

6  blank and it just says 850; right?

7      A.    Yes.

8      Q.    Okay.

9            So does this document refresh your

10  recollection that your starting salary was,

11  indeed, $850 when you first started at Zaro's?

12     A.    I guess so.

13     Q.    If you see the deductions,

14  underneath there you see we've got some -- the

15  only deductions here are for the Federal

16  income tax, Medicare, Social Security and

17  SUISDI, and New York State income tax.  There

18  are no deductions for, you know, not having

19  worked five days or anything like that;

20  correct?

21     A.    This was for five days.

22     Q.    Okay.

23            So that was -- yes, that was your

24  regular salary for five days; correct?

25     A.    Yes.

Page 92

                    L. Rivera

2   clarified for you what these pay stubs are?

3       A.    Yes.

4       Q.    That Anjost 000255 is the first week

5   and that Anjost 254 is the second week?

6       A.    Yes, sir.

7       Q.    Can we agree that Anjost 254

8   reflects that, once again, your regular pay

9   was 850 for that week?

10      A.    Yes, sir.

11      Q.    And, once again, the only deductions

12  are income tax and Medicare and Social

13  Security; correct, on Anjost 254?

14      A.    Yes, sir.

15      Q.    Okay.

16            Let's flip to Anjost 253, which, as

17  you'll see, is dated seven days later on the

18  period end, if you look at the period end of

19  254 versus 253; correct?

20      A.    I'm sorry?

21      Q.    I'm sorry.

22            So the period end on Anjost 253 is

23  8/12/2007; correct?

24      A.    Yes.

25      Q.    And the period end on Anjost 254, if

Page 93

1                L. Rivera

2    you flip back one page, flip back to the

3    second page, was a -- the period end there was

4    8/5/2007; correct?

5        A.    Yes.  Period end 8/5.

6        Q.    Okay.

7              So the 253 is seven days following

8    254; correct?  It's the next week's pay stub?

9        A.    Yes.

10       Q.    Okay.

11             And, once again, we've got your

12   regular pay at 850, and the deductions only

13   being the income tax, Social Security

14   deductions; correct?

15       A.    Yes.

16       Q.    Okay.

17             Let's flip to Anjost 252.  And, once

18   again, we see that this is reflecting the next

19   week's pay stub.  The period end on 252 is --

20   you see where it says 8/19/2007; correct?

21       A.    Yes, sir.

22       Q.    That is the period end, and that's

23   one week following the period end on the

24   previous statement; correct?

25       A.    Yes, sir.

Page 94

1                        L. Rivera

2        Q.     Okay.

3               And, once again, this is an earnings

4    statement with your name on it up at the top;

5    correct?

6        A.     Yes, sir.

7        Q.     And, once again, your regular

8    earnings here are 850 a week; correct?

9        A.     Yes, sir.

10       Q.     Okay.

11              And the deductions, once again, are

12   only deductions for income tax, Social

13   Security and the like; correct?  On 252.

14       A.     Yes, sir.

15       Q.     Okay.

16              Now, let's go to Anjost 251.  And

17   here, once again, an earnings statement with

18   your name on it; correct?

19       A.     Yes, sir.

20       Q.     And the period end is one week

21   following the period end on 252; correct?

22       A.     Yes, sir.

23       Q.     And the earnings statement here

24   indicate that, once again, you earned 850 in

25   regular earnings; correct?

Page 95

                        L. Rivera

1

2       A.    Yes, sir.

3       Q.    And like the other earnings, the

4   rate and hours columns are blank; correct?

5       A.    Yes, sir.

6       Q.    Okay.

7             And, once again, like the other

8   statements, your -- the only deductions

9   reflected here are income tax, Medicare,

10  Social Security, et cetera; correct?

11      A.    Yes, sir.

12      Q.    And there are no deductions here for

13  your not having worked a full week or your

14  being paid less than five days; correct?

15      A.    Yes, I guess so.

16      Q.    Okay.

17            Let's go to Anjost 250.  And, once

18  again, another earnings statement for the next

19  week in this series, so we're now up to

20  September 2, 2007; correct?

21      A.    Yes, sir.

22      Q.    And, once again, here we've got the

23  regular rate is still 850, the deductions are

24  still just the statutory deductions; correct?

25      A.    Yes, sir.

Case 15-2143, Document 32, 10/19/2015, 1622734, Page144 of 199

Page 96

                              L. Rivera

1

2      Q.     Okay.

3             Let's go to Anjost 249, which is

4      seven days following the pay period on 250;

5      correct?

6      A.     Yes, sir.

7      Q.     And, again, your earnings statement

8      with the regular earnings of 850 a week;

9      correct?

10     A.     Yes, sir.

11     Q.     And no deductions other than the tax

12     and Medicare, Social Security, statutory

13     deductions; correct?

14     A.     Yes, sir.

15     Q.     Okay.

16            Let's go to Anjost 248, which is the

17     next page.  And this reflects period end of

18     9/16/2007; correct?

19     A.     Yes, sir.

20     Q.     And that's seven days following the

21     previous period end; correct?

22     A.     Yes, sir.

23     Q.     Okay.

24            And this is, again, your earnings

25     statement reflecting a regular salary wage of

Page 97

1                          L. Rivera

2      850 a week; correct?

3          A.    Yes, sir.

4          Q.    And reflecting deductions of only

5      the statutory deductions; correct?

6          A.    Yes, sir.

7          Q.    Okay.

8              Now, let's go to 247, which is the

9      following period, period end 9/23/2007, and

10     this is another earnings statement -- this is

11     the next earnings statement in the series;

12     correct?

13         A.    Yes, sir.

14         Q.    And so this is, once again, your

15     earnings statement reflecting that you earned

16     850 a week as your regular salary with no

17     deductions other than the statutory

18     deductions; correct?

19         A.    Yes, sir.

20         Q.    Okay.

21              Now, Mr. Rivera, during the course

22     of your -- during the course of your

23     employment with Zaro's, did you ever receive

24     raises to your weekly salary?

25         A.    Yes.

Page 101

1          L. Rivera

2    what happened was, I went to show them a

3    production.  You know what I mean?  Show them

4    how to play with the bread and stuff like

5    that, and they wanted me to stay there and

6    manage the place.

7          Q.    So you were working for two years at

8    the W before you started working at Zaro's?

9          A.    Yes.

10         Q.    Okay.

11               And so the reason you received this

12   raise was because you wanted to be making what

13   you had been working at W at Zaro's?

14         A.    Yes.

15         Q.    Okay.

16               So let's turn back to Anjost 246,

17   Exhibit -- the first page of Exhibit 8.  And

18   so we can agree then, Mr. Rivera, that this

19   document reflects that you were earning as of,

20   the period ending September 30, 2007, a

21   regular salaried wage of $1,097 a week;

22   correct?

23         A.    Yes.

24         Q.    Okay.

25               So let's go to the next page, Anjost

Page 102

1                          L. Rivera

2      245.  And this is the next period, period

3      ending October 7, 2007.  And we can agree,

4      Mr. Rivera, that -- can we not, that this

5      document reflects now that you're receiving,

6      once again, your regular earnings, your

7      regular salary is $1,097, and that this

8      document reflects only statutory deductions

9      for income tax and Medicare and so forth;

10     correct?

11          A.    Yes.

12          Q.    Let's go to the next page, Anjost

13     245, which is an earnings, your earnings

14     statement for the period end October --

15     10/14/2007; correct?

16          A.    Yes.

17          Q.    And this document, again, reflects

18     regular earnings of $1,097 and only Federal

19     and State income, Medicare, Social Security

20     tax deductions; correct?

21          A.    Yes.

22          Q.    Now -- and then let's go to Anjost

23     243, which is your earnings statement, period

24     end October 21, 2007; correct?

25          A.    The 21st to the 26st you're talking

Page 103

1                        L. Rivera

2    about?

3        Q.     Yes.   Anjost 000243; right?

4        A.     Yes, sir.

5        Q.     And, again, this is your earnings

6    statement for the period end October 21, 2007;

7    correct?

8        A.     Yes, sir.

9        Q.     And it reflects, once again, regular

10   salaried earnings of $1,097 and deductions of

11   only the Federal and State income tax and

12   Medicare, Social Security; correct?

13       A.     Yes, sir.

14       Q.     Okay.

15              Anjost 242, if we go to that, which

16   is the next page and is your earnings

17   statement for the next week, period end

18   10/28/2007; correct?

19       A.     Yes, sir.

20       Q.     And it reflects regular earnings of

21   $1,097 in a salaried wage; correct?

22       A.     Yes, sir.

23       Q.     And only deductions for, once again,

24   the statutory income tax, Medicare, Social

25   Security, et cetera; correct?

Page 104

1                    L. Rivera

2        A.    Yes, sir.

3        Q.    Okay.

4              Let's go to the next page, Anjost

5    241, which is the earnings statement for the

6    next period, period end, 11/04/07; correct?

7        A.    11/04 to 09, is that the one?

8        Q.    Correct.   Anjost 000241; correct?

9        A.    Yes, sir.

10        Q.    Okay.

11              And this document reflects regular

12    salaried earnings of $1,097; correct?

13        A.    Yes, sir.

14        Q.    And it reflects no deductions, other

15    than the statutory deductions for income tax,

16    Medicare, Social Security, and the

17    New York State income tax; correct?

18        A.    Yes, sir.

19        Q.    Okay.

20              Let's go to Anjost 240, the next

21    page, which is the earnings statement, your

22    earnings statement for period end 1/11/07;

23    correct?

24        A.    Yes, sir.

25        Q.    And that reflects regular earnings

Page 105

1                    L. Rivera

2    of $1,097 in salaried earnings; correct?

3        A.    Yes, sir.

4        Q.    And, once again, no deductions,

5    other than the statutory deductions for income

6    tax and Medicare and so forth; correct?

7        A.    Yes, sir.

8        Q.    Anjost -- the next page, Anjost 239,

9    which is your earnings statement for the next

10   period, period end 1/18/2007; correct?

11       A.    Yes, sir.

12       Q.    And that reflects, once again, your

13   regular salaried earnings of $1,097; correct?

14       A.    Yes, sir.

15       Q.    And no deductions other than the

16   income tax, Medicare, Social Security, and so

17   forth; correct?

18       A.    Yes, sir.

19       Q.    Okay.

20             The next page is Anjost 238, which

21   is your earnings statement for the period end

22   11/25/2007; correct?

23       A.    Yes.

24       Q.    And this reflects your regular

25   salary of 1097; correct?

Page 106

1                    L. Rivera

2        A.    Yes.

3        Q.    And it also reflects a holiday and

4    earnings of 219.40, $219.40; correct?

5        A.    Yes, sir.

6        Q.    What is -- do you know what that pay

7    was for?

8        A.    It's holiday pay.

9        Q.    So, what does that mean?

10        A.    That means I worked that holiday and

11    I got paid for it.

12        Q.    So in addition to your salary, you

13    worked an extra day and received additional

14    pay?

15        A.    They paid me holiday pay.

16        Q.    Okay.

17              And did they typically pay you

18    holiday pay if you worked on a holiday?

19        A.    Yes.

20        Q.    And why did they pay you the holiday

21    pay in addition to your salary pay?

22        A.    Because I got holiday pay.

23        Q.    So when you started work at Zaro's,

24    did they explain to you, if you worked a

25    holiday, you'd get pay over and above your

Page 108

1                        L. Rivera

2    you'd receive that $219.40?

3        A.    Yes.

4        Q.    Okay.

5              Let's go to Anjost -- the next page,

6    Anjost 237, which is the earnings statement

7    for the next week; correct?

8        A.    Yes.

9        Q.    Period end 12/02/07; correct?

10       A.    Yes.

11       Q.    And that's -- this is now reflecting

12   that your regular salary wage of $1,097;

13   correct?

14       A.    Yes, sir.

15       Q.    Okay.

16             And no deductions other than the

17   income tax and other tax deductions; correct?

18       A.    Correct.

19       Q.    Okay.

20             Let's go to 236, the next page,

21   which is your earnings statement for the

22   period end 12/09/2007; correct?

23       A.    Correct.

24       Q.    And this reflects, once again, your

25   regular salaried earnings of $1,097, and only

Case 15-2143, Document 32, 10/19/2015, 1622734, Page153 of 199

Page 111

1                    L. Rivera

2    quickly.  Okay.

3             So, Mr. Rivera, you've now got in

4    front of you Exhibit 9; correct?

5        A.    Correct.

6        Q.    Okay.

7             And this is another series of

8    earnings statements that begins Anjost 203 and

9    the last page is Anjost 183; correct?  The

10   Bates labels on the bottom right-hand corner.

11       A.    183.

12       Q.    Okay.

13            So, Mr. Rivera, this is an earnings

14   statement for the period ending 7/27/2008;

15   correct?

16       A.    Yes, sir.

17       Q.    And if you look at your -- the

18   regular pay here, it reflects your salaried

19   wage of 12 -- $1,207; correct?

20       A.    Correct.

21       Q.    So does this document reflect that

22   you received another pay increase while you

23   were working at Zaro's?

24       A.    Yes.

25       Q.    Do you remember why, Mr. Rivera,

Page 112

L. Rivera

2  that on or about July 27, 2008 you received a

3  pay increase?

4      A.    I guess when you do good work, you

5  got honored for it.

6      Q.    Do you remember who gave you this

7  pay increase?

8      A.    All my pay raises came from John

9  Apgar.

10     Q.    Okay.

11           And so this document reflects your

12  regular earnings along with the -- only the

13  statutory deductions; correct?

14     A.    Yes.

15     Q.    And it looks like you, in addition

16  to your salary, you worked an extra day and

17  received additional pay for that day; correct?

18     A.    Yes.

19     Q.    All right.

20           Let's go to 202, the next page,

21  which reflects the period end August 3, '08,

22  the next week.  It's your earnings statement;

23  correct?

24     A.    Can we go back to the beginning

25  here, to Exhibit 9?

Page 114

1                         L. Rivera

2        Q.    So you received a paid day off for

3   your birthday?

4        A.    Yes.

5        Q.    Okay.

6        A.    No, but I worked.  No, I'm not sure.

7   I'm not sure.  But I know I got paid for my

8   birthday.

9        Q.    Okay.

10        A.    So I worked the five days and my

11   birthday came in as a sixth day.

12        Q.    Even though you only worked the five

13   days, you received an extra day's pay?

14        A.    Yes.  Because that was in my thing.

15   That's what I got, five sick days, a paid --

16   and my paid birthday.

17        Q.    Okay.

18             Well, let's talk about that quickly,

19   Mr. Rivera.  So when you started, you received

20   how many -- you received a certain number of

21   paid sick days?

22        A.    I think it was five holiday paid.

23        Q.    Okay.

24             So you received five holiday -- paid

25   holidays?

Page 115

1                          L. Rivera

2          A.    No.  I'm sorry.  It's five sick

3     days.

4          Q.    Okay.

5          A.    Five sick days.

6          Q.    Okay.

7                So you received five paid sick days

8     off --

9          A.    A paid birthday --

10         Q.    Okay.

11         A.    -- and I don't remember the others.

12         Q.    Did you receive paid vacation?

13         A.    Yes.

14         Q.    How many days of vacation did you

15    receive?

16         A.    One week.

17         Q.    Okay.

18               So you received one week of

19    vacation, five sick days.  Did you receive any

20    personal days?

21         A.    I think I get two personal days, I

22    think.

23         Q.    Okay.

24               And then did you receive any

25    holidays off?

Page 116

1              L. Rivera

2    A.    No.  I worked holidays.

3    Q.    Okay.

4          So Christmas Eve?

5    A.    We worked.

6    Q.    Christmas?

7    A.    Christmas we worked.

8    Q.    Thanksgiving?

9    A.    Seven days operation, 24 hours.

10   Q.    Okay.

11         So you worked all those holidays?

12   A.    Yes.

13   Q.    Okay.

14         But you did receive -- okay.

15         So let's refer back then to

16   Exhibit 9, and I think we've -- we'll go to

17   the second page.  I think we discussed Anjost

18   203.  We'll go to Anjost 202, which is the

19   second page of the document.

20   A.    Yes.

21   Q.    And that reflects the earnings --

22   your earnings statement for the period ending

23   8/3/08; correct?

24   A.    Yes.

25   Q.    And that reflects your regular pay

Page 117

1                          L. Rivera

2      of 1207?

3          A.     Yes.

4          Q.     It reflects no deductions, other

5      than the statutory tax and Medicare

6      deductions?

7          A.     Yes.

8          Q.     And it reflects an additional day of

9      pay; correct?

10          A.     Yes.

11          Q.     Okay.

12                 Let's go to 201.  And this document

13      is the next earnings statement, period end

14      8/10/08.  It reflects the same weekly salary

15      of 1207, and no deductions, other than the

16      statutory deductions; correct?

17          A.     Yes, sir.

18          Q.     Okay.

19                 Let's go to the next page.

20          A.     You're looking at 201, yes?

21          Q.     I'm looking at 201.

22          A.     Yes.  But that other $241, it says

23      "blank."  On my paychecks it says "Other."

24          Q.     Okay.

25                 And what --

Page 118

1                        L. Rivera

2        A.      It doesn't say "blank."

3        Q.      And what does that blank on this

4   earnings statement refer to, Mr. Rivera?

5        A.      An extra day worked.

6        Q.      Okay.

7                So in addition to working your

8   regular five-day salaried workweek, you came

9   in and worked a weekend day?

10       A.      Yes.  A weekend day.

11       Q.      Okay.

12               Let's go to 200, Anjost 200, the

13   next page, which is an earnings statement,

14   your earnings statement for the period end

15   8/17/2008; correct?

16       A.      Correct.

17       Q.      And this reflects your regular

18   salaried wage of $1,207, along with extra pay

19   for an additional work date; correct?

20       A.      Correct.

21       Q.      And it reflects deductions only --

22   the only deductions reflected are the

23   statutory tax and Medicare and Social Security

24   deductions; correct?

25       A.      Correct.

Page 122

1                    L. Rivera

2        Q.     I'm sorry.

3               So this document, Anjost 196 --

4        A.     Yes, sir.

5        Q.     -- your -- has a period end of

6    9/14/08; correct?

7        A.     Yes.

8        Q.     And it reflects your regular salary

9    of $1,207, and an additional pay of 241.40;

10   correct?

11       A.     Yes, sir.

12       Q.     Okay.

13              And the only deductions here, once

14   again, are those for income tax, Medicare and

15   Social Security; correct?

16       A.     Yes.

17       Q.     Okay.

18              Let's go to the next page, 195, your

19   earnings statement, again, for the next week,

20   next period, I'm sorry, period end 9/21/2008.

21              Like the previous documents, I

22   believe this document reflects your regular

23   salaried wage of $1,207, as well as additional

24   pay of 241 for an additional day of work;

25   correct?

Page 123

L. Rivera

1

2      A.     Correct.

3      Q.     So -- and the only deductions are

4  those for income tax, Medicare, Social

5  Security, and so forth; correct?

6      A.     Correct.

7      Q.     There are no deductions -- there no

8  other deductions to your wage other than the

9  statutory deductions; correct?

10      A.     Correct.

11      Q.     The next page is 194, which is your

12  earnings statement for the next period,

13  9/28/2008.  This one reflects only your

14  regular salaried pay; correct?

15      A.     Correct.

16      Q.     So here you worked just your regular

17  five-day shift; correct?

18      A.     Correct.

19      Q.     And you received -- the only

20  deductions that were taken from your pay were

21  those for taxes and so forth; correct?

22      A.     Correct.

23      Q.     Let's go to the next page, 193, is

24  an earnings statement for period end

25  10/5/2008; correct?

Page 124

L. Rivera

2    A.    Correct.

3    Q.    And this reflects, once again, your

4    regular salary of $1,207 and an additional

5    day's worth of pay for 241.40; correct?

6    A.    Correct.

7    Q.    And, again, the only deductions here

8    are for -- excuse me -- the statutory taxes,

9    Medicare, Social Security; correct?

10    A.    Correct.

11    Q.    Let's go to the next page, 192.

12    This is an earnings statement for the next

13    week, period end 10/12/2008; correct?

14    A.    Correct.

15    Q.    And, once again, we've got your

16    regular salary of $1,207, along with an

17    additional day of pay at $241.40; correct?

18    A.    Correct.

19    Q.    And, again, here we have no

20    deductions other than the statutory

21    deductions; correct?

22    A.    Correct.

23    Q.    The next page is 191, which is an

24    earnings statement for the next week, period

25    end October 19, 2008; correct?

Page 125

1                    L. Rivera

2      A.    Yes.

3      Q.    And this, once again, reflects your

4   regular pay of $1,207, along with an

5   additional day of work on top of your salaried

6   wage; correct?

7      A.    Correct.

8      Q.    And your deductions are only the

9   statutory deductions; correct?

10     A.    Correct.

11     Q.    So let's go to 190, the earnings

12  statement for the next period, October 26,

13  2008, which, again, reflects your regular

14  salary of $1,207, and here reflects blank pay

15  of 482.80.

16            Mr. Rivera, do you know why the

17  blank pay went --

18     A.    Seven days a week.

19     Q.    Okay.

20            Let me just finish the question.

21  Let me finish the question.

22            So do you know why your blank pay

23  went on Anjost 191 from 241.40 to blank pay of

24  482.80 on Anjost 190?

25     A.    I worked seven days that week.

Page 126

1                      L. Rivera

2        Q.    Okay.  Thank you.

3              And you deduct -- the only

4    deductions here are, once again, those

5    statutory deductions; correct?

6        A.    Correct.

7        Q.    Okay.

8              Anjost 189 is the period end

9    November 2 -- 11/2/08; correct?

10       A.    Yes, sir.

11       Q.    And, once again, this document

12   reflects your regular earnings of $1,207 in

13   salary and an additional pay of 241.40 for an

14   extra day of work; correct?

15       A.    Correct.

16       Q.    And, again, the only deductions are

17   your statutory deductions; correct?

18       A.    Yes, sir.

19       Q.    Okay.

20             The next statement is your -- the

21   period end 11/09/2008, which reflects the

22   earning -- regular salaried earnings of $1,207

23   and an additional day of work at 241.40;

24   correct?

25       A.    Correct.

Page 127

1                        L. Rivera

2        Q.    So, once again, this document

3   reflects you received your regular salary and

4   then you worked a sixth day and received

5   an additional -- additional pay for that day;

6   correct?

7        A.    Correct.

8        Q.    And your deductions here are only

9   the statutory deductions for income tax,

10  Social Security, Medicare and New York State

11  income tax; correct?

12       A.    Correct.

13       Q.    Okay.

14             So let's go to 187, which is the

15  earnings statement for the next period, 11 --

16  period end 11/16/2008.  And similarly to the

17  rest of these, it reflects a regular salary of

18  $1,207 and an additional day of work at

19  241.40; correct?

20       A.    Correct.

21       Q.    And there are no deductions, other

22  than the statutory deductions; correct?

23       A.    Correct.

24       Q.    Anjost 186 is -- I'm sorry, do you

25  need to answer that?

Page 128

                              L. Rivera

2       A.      No.

3       Q.      Okay.

4               Is an earnings statement for the

5    next week, period end 11/23/2008, with, once

6    again, reflecting your salaried regular wage

7    of $1,207, along with blank pay of 482.80.

8               And, once again, Mr. Rivera, can you

9    explain why the blank pay in this document on

10   186 has gone from -- gone to 482, as opposed

11   to previous statements, such as Anjost 187,

12   the previous page, that reflects pay of

13   241.40?

14      A.      I worked seven days.

15      Q.      Okay.

16              Let's go to Exhibit -- or the next

17   page, I'm sorry, Anjost 185, the earnings

18   statement for the period ending 11/30/2008.

19   And that reflects your regular pay of $1,207,

20   along with blank pay of 241 and holiday pay of

21   the same amount.

22              So, Mr. Rivera, can you explain, do

23   you recall why you received, in addition to

24   your salary, these two -- the additional pay

25   reflected here?

Page 129

1                          L. Rivera

2        A.      I worked seven days.

3        Q.      And why was one blank and one

4    holiday.

5                Do you recall?

6        A.      Because one day becomes a

7    sick day -- No. 6 day would be Saturday or --

8    I mean, Sunday.  And then if the holiday lands

9    on a Saturday, I get paid for the Saturday.

10       Q.      Okay.

11               And, once again, Mr. Rivera, the

12   only deductions here are those for your income

13   tax, Medicare, Social Security; correct?

14       A.      Correct.

15       Q.      Next page is Anjost 184, which is

16   your pay period, your earnings statement for

17   the pay period ending 12/07/08.  And this

18   reflects regular pay of -- regular salaried

19   pay of 1207 or $1,207; correct?

20       A.      Correct.

21       Q.      Along with an additional day's worth

22   of pay at 241.40; correct?

23       A.      Correct.

24       Q.      And the only deductions here are

25   those statutory income tax and Social

Page 130

1          L. Rivera

2    Security, Medicare, and so forth; correct?

3          A.    Correct.

4          Q.    Okay.

5                Last one on this sequence is the

6    earnings statement, your earnings statement

7    with period end 12/14/2008, with your regular

8    salaried earnings of $1,207, along with an

9    additional blank pay of 241.40, which, as

10   reflected previously, Mr. Rivera, does this

11   document reflect that you received your

12   regular weekly salary and then worked an

13   additional day on top of that salary and

14   received an additional pay for that extra day

15   of work?

16         A.    Correct.

17         Q.    Okay.

18               And your own deductions are the

19   statutory deductions for income tax and so

20   forth; correct?

21         A.    Correct.

22         Q.    Okay.

23               Let me show you --

24               MR. POSSIDENTE:  I think we're up

25   to -- this is going to be 10.  Which is

Page 136

L. Rivera

1

2        Let's turn to Exhibit 11, which is

3    the series of earnings statements.

4        Now we've already -- now,

5    Mr. Rivera, let's turn back to Anjost 70, that

6    first one, which we've already discussed,

7    reflects your salary increase.  It also

8    reflects a sick day of $275.40.

9        So, Mr. Rivera, do I take this to

10    mean that you also, in addition to your

11    salary, took a sick day and you were paid for

12    a sick day?

13        A.    Yes.

14        Q.    Okay.

15        And, once again, the only deductions

16    here are your deductions for income tax,

17    Medicare, Social Security, et cetera; correct?

18        A.    Correct.

19        Q.    Let's go to 69, which is the second

20    page of Exhibit 11, earnings -- your earnings

21    statement for the next period, period end

22    2/6/2011.  And, once again, this document

23    reflects, Mr. Rivera, your salaried wage of

24    1377 and then additional pay of 275.40;

25    correct?

Page 137

L. Rivera

1

2      A.     Correct.

3      Q.     And the additional pay, Mr. Rivera,

4  what does that additional blank line, Mr. --

5  line labeled --

6      A.     What page?

7      Q.     I'm sorry, Mr. Rivera.  Let me

8  finish the question.

9             That in addition to the regular,

10  your regular salaried earnings, Mr. Rivera,

11  there's also a line here labeled blank.  What

12  does that line, which has zero, under the Rate

13  column is blank, under the Hours column says

14  zero, and under the This Period column says

15  275.40, what does that -- what does that line

16  reflect?

17     A.     That I worked six days.

18     Q.     Let's go to Anjost 68, which is the

19  next document in this series.  It is the

20  earnings statement for the next period, period

21  end 2/13/11.  And it reflects your regular

22  earnings of $1,377; correct?

23     A.     Correct.

24     Q.     Once again, Mr. Rivera, in addition

25  to your weekly salary, you received additional

Page 138

                        L. Rivera

2  pay for an additional day worked; correct?

3      A.    Correct.

4      Q.    And here there are no deductions,

5  other than the statutory deductions for income

6  tax, Medicare, Social Security, et cetera;

7  correct?

8      A.    Correct.

9      Q.    Let's go to Anjost 67, which is the

10  earnings statement for the next period,

11  dated -- well, period end 2/20/2011.  And it

12  reflects your, once again, your salaried wage

13  of $1,377; correct?

14      A.    Correct.

15      Q.    And then it reflects an additional

16  day of pay for additional work, an additional

17  day of work above your salaried wage; correct?

18      A.    Correct.

19      Q.    And there are no deductions other

20  than your statutory deductions; correct?

21      A.    Correct.

22      Q.    Let's go to Anjost 66, which is your

23  earnings statement for the next period, period

24  end 2/27/2011.  And, once again, Mr. Rivera,

25  does this document reflect that you received

Page 139

1              L. Rivera

2    regular salaried earnings of $1,377?

3        A.    I'm sorry?

4        Q.    I'm sorry, Mr. Rivera.

5              Does this document reflect that you

6    earned your regular salary for this week of

7    $1,377?

8        A.    Yes.

9        Q.    And does it also reflect that you

10   earned, in addition to your salary, money for

11   an additional -- additional day of work?

12       A.    Yes.

13       Q.    Over and above your salary; correct?

14       A.    Correct.

15       Q.    And it reflects that your only

16   deductions were those for statutory income

17   tax, Medicare, et cetera, deductions; correct?

18       A.    Correct.

19       Q.    Let's go 265, which is the earnings

20   statement for the next period, 3 -- period end

21   3/06/2011.  And it reflects -- are you with

22   me?

23       A.    Yes.

24       Q.    Okay.  Sorry.

25              With your regular earnings are, once

Page 140

1                    L. Rivera

2      again, $1,377 in regular salary and it

3      reflects that you also worked an additional --

4      in addition to your salary, you received

5      additional compensation of $275.40; correct?

6          A.     An extra day worked.

7          Q.     Okay.

8                 And your -- and your statutory, your

9      deductions here are, once again, only the

10     statutory deductions; correct?

11         A.     Correct.

12         Q.     Okay.

13                On to 64, which is the earnings

14     statement, period end 3/13/2011, which

15     reflects your regular salaried earnings of

16     $1,377; correct?

17         A.     Correct.

18         Q.     Along with additional compensation

19     of 275.40 over and above your salary; correct?

20         A.     Correct.

21         Q.     And what does that additional

22     compensation over and above your salary

23     reflect, Mr. Rivera?

24         A.     A day's, another day's work, six

25     days.

Page 141

1                           L. Rivera

2        Q.    Meaning that you worked a --

3        A.    On Sunday.

4        Q.    -- Sunday.  Okay.

5              And, once again, no deductions,

6    other than the statutory deductions; correct?

7        A.    Yes.

8        Q.    Let's go on to Anjost 63, which is

9    the earnings statement, your earnings

10   statement for the next period, period end

11   3/20/2011.  And, once again, this reflects

12   regular, your regular salaried wage of 1377,

13   along with an additional compensation for

14   additional work over and above your salary;

15   correct, Mr. Rivera?

16       A.    An extra day's pay.

17       Q.    Okay.

18       A.    Sunday.

19       Q.    And no statutory wages -- no --

20   excuse me -- deductions other than the

21   statutory deductions; correct?

22       A.    Correct.

23       Q.    Let's go 62.  And this is your

24   earnings statement for the next period, period

25   end 3/27/2011, once again, reflecting that you

Page 143

1                          L. Rivera

2      end -- excuse me -- 4/15 -- or, no -- period

3      end 4/10/2011, with, once again, reflecting

4      the same as the previous, that you received

5      your regular salary and that you worked an

6      additional -- you worked Sunday over and above

7      your regular salary for the five days;

8      correct?

9          A.    Correct.  270 was my extra day's pay

10     when I work on Sunday.

11         Q.    So then, Mr. Rivera, and there are

12     no deductions, other than the statutory

13     deductions; correct?

14         A.    Correct.

15         Q.    Let's go on to 59, which is the

16     earnings statement for the next week, period

17     end 4/17/2011.  And as with the previous

18     periods, Mr. Rivera, does this document

19     reflect that you have received your regular

20     salary of $1,377, as well as additional pay of

21     $275, for working the -- working on Sunday?

22         A.    Yes.

23         Q.    Okay.

24                And there are no deductions, other

25     than statutory deductions; correct?

Case 15-2143, Document 32, 10/19/2015, 1622734, Page176 of 199

Page 144

1                      L. Rivera

2        A.     Correct.

3        Q.     Let's go to the next page, which is

4   Anjost 58, the earnings statement, period end

5   4/24/2011.  And as with the previous periods,

6   Mr. Rivera, this document reflects you earned

7   your regular salary for -- your regular salary

8   for the week, along with additional

9   compensation for working on Sunday; correct?

10       A.     Correct.

11       Q.     And your -- the only deductions are

12  your statutory deductions; correct?

13       A.     Correct.

14       Q.     Let's go to the next page, which is

15  Anjost 57, your earnings statement, period end

16  May 1, 2011, regular pay -- sorry.  Once again

17  we've got the same situation; correct, where

18  you've got the -- your regular earnings and --

19  your regular earnings of your 1377 in salary

20  and you worked an additional day of 275.40;

21  correct?

22       A.     Correct.

23       Q.     Anjost 56 is the next page, period

24  end May -- or 05/08/2011; correct?

25       A.     Correct.

Case 15-2143, Document 32, 10/19/2015, 1622734, Page177 of 199
**A174**

Case 1:13-cv-00379-MGC   Document 11-9   Filed 05/15/15   Page 58 of 64

                                                      Page 145

1                        L. Rivera

2        Q.    And, once again, this reflects your

3   regular salary of 1377 for your typical

4   workweek, along with a blank of 550.80.

5              And, Mr. Rivera, can you explain why

6   the blank on 56, the blank line on 56, or --

7   can you explain why the line labeled "blank"

8   on, quote/unquote, "blank" on 65 reads 550.80,

9   whereas, in the past -- whereas, in the past

10  it has only read 275.40?

11       A.    I worked seven days.

12       Q.    Okay.

13             Let's go on to 55.  And, Mr. Rivera,

14  this is the earnings statement dated period

15  end 5/15/2011, which, once again, reflects

16  your regular salary of 1377; correct?

17       A.    Correct.

18       Q.    And then an additional compensation

19  of 275.40 for your work on Sunday; correct?

20       A.    Correct.

21       Q.    And, once again, as with the

22  previous statements we have no deductions,

23  other than your statutory deductions; correct?

24       A.    Correct.

25       Q.    And let's go to 54.  Your earnings

Page 146

1                     L. Rivera

2       statement here for this period is period end

3       May -- or period end 5/22/2011.  And, once

4       again, regular salary of 1377, and additional

5       pay of 275.40; correct?

6           A.     Correct.

7           Q.     And so you received your regular

8       salary and then you worked on a Sunday;

9       correct?

10          A.     Correct.

11          Q.     And there are no deductions other

12      than statutory deductions; correct?

13          A.     Correct.

14          Q.     Let's go to 53, the earnings

15      statement for the next period, period end

16      May 29, 2011.  And, again, earnings, 3177 in

17      your regular salary, and then blank

18      earnings -- additional earnings labeled on

19      this document, as with the rest, "blank," of

20      275.40; correct?

21          A.     Correct.

22          Q.     And, once again, your -- there are

23      no deductions, other than the statutory

24      deductions; correct?

25          A.     Correct.

Page 147

1              L. Rivera

2       Q.    Let's go to 52.  Your earnings

3    statement here is for the period, the next

4    period, 6/5/2011.  And here, Mr. Rivera, we

5    have, I believe, your regular five-day -- your

6    regular salary, your weekly salary of $1,377,

7    along with a blank, along with earnings of 275

8    labeled "blank," and earnings of 275 --

9    $275.40 labeled "holiday"; correct?

10      A.    Correct.

11      Q.    And so what do the -- what do the

12   additional -- the blank period, the blank line

13   of 275.40 and the holiday line of 275.40 in

14   earnings, what are those two numbers?

15      A.    I worked seven days a week.

16      Q.    So you worked a --

17      A.    I worked -- I'm sorry.

18      Q.    So let me -- yes.

19            So you worked -- you worked your

20   regular five-day workweek.  And then in

21   addition to that, you worked a holiday and a

22   Sunday?

23      A.    Yes.

24      Q.    Okay.

25            And there are no deductions in

Page 148

1                     L. Rivera

2   addition to your -- well, sorry.  There are no

3   deductions except for the statutory income

4   tax, Medicare, Social Security deductions;

5   correct?

6       A.    Correct.

7       Q.    Let's go to Anjost 51, the earnings

8   statement for period end 6/12/2011, which --

9   excuse me -- as with previous statements,

10  reflects your regular salaried wage for the

11  week of $1,377 and an additional pay labeled

12  "blank" here of 275.40; correct?

13      A.    Correct.

14      Q.    And that reflects, once again, as we

15  have said previously, your salary, plus an

16  additional day's worth of work; correct?

17      A.    Correct.

18      Q.    And there are no deductions here,

19  other than your statutory deductions; correct?

20      A.    Correct.

21      Q.    Let's go to the next one, Anjost 50.

22  I promise we're almost done.  The earnings

23  statement here is labeled period end -- this

24  is the earnings statement for the period

25  ending 6/19/2011; correct?

Page 149

                          L. Rivera

1

2       A.      Correct.

3       Q.      And this, once again, reflects your

4    salaried, your weekly salaried wage of $1,377,

5    along with pay labeled "blank" of 275.40;

6    correct?

7       A.      Correct.

8       Q.      And there are no deductions, other

9    than the statutory deductions; correct?

10      A.      Correct.

11      Q.      And so these, once again, this

12   reflects you received your weekly salary and

13   an additional pay for an additional day's

14   worth of work; correct?

15      A.      Correct.

16      Q.      Let's go to Anjost 49, the earnings

17   statement, period end 6/26/11.  And as with

18   the previous documents, is this the same,

19   Mr. Rivera, as the previous ones?

20      A.      Yes.

21      Q.      In that it reflects your salaried

22   wage and an additional day's worth of work?

23      A.      Yes.

24      Q.      And, once again, deductions, no

25   deductions, other than the statutory

Page 150

1                   L. Rivera

2    deductions; correct?

3        A.    Correct.

4        Q.    Let's go Anjost 48.  It's your

5    earnings statement of -- your earnings

6    statement, period end 7 -- 7/3/2011,

7    reflecting, as with the previous ones,

8    Mr. Rivera, your regular weekly salary, along

9    with pay labeled "blank" of -- in the amount

10   of $275.40; correct?

11       A.    Correct, sir.

12       Q.    And no deductions, other than the

13   statutory deductions; correct?

14       A.    Correct.

15       Q.    Let's go to the next page, which is

16   47.  Earnings statement, period end 7/10/2011,

17   which reflects the -- your regular salary of

18   $1,377; correct?

19       A.    Correct.

20       Q.    Along with pay in the amount of

21   $275.40 labeled "blank" and pay in the amount

22   of $2,375.40 labeled "holiday"; correct?

23       A.    Correct.

24       Q.    And so, Mr. Rivera, what do those

25   two lines reflecting blank and holiday --

Page 151

1                     L. Rivera

2        A.     I worked an extra day, plus a

3   holiday day.

4        Q.     Okay.

5               And no deductions, other than the

6   statutory deductions; correct?

7        A.     Correct.

8        Q.     Now, let's get to the last one,

9   which is Anjost 46, which is the earnings

10  statement for period end 7/17/2011; correct?

11       A.     Correct.

12       Q.     And as with the previous documents,

13  this reflects your regular salaried wage of

14  1377, along with your -- along with additional

15  pay in the amount of $275.40 labeled "blank";

16  correct?

17       A.     Correct.

18       Q.     Okay.

19              So, Mr. Rivera, we've gone through

20  all of those statements.  So we can agree

21  that the -- well, let's take a two-minute

22  break and we'll come back.

23              (Recess taken from 12:47 p.m. to

24       12:50 p.m.)

25              MR. POSSIDENTE:  I just have a few

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS RIVERA,<br><br>         Plaintiff,<br><br>   – against –<br><br>ANJOST CORPORATION and JOSEPH ZARO,<br><br>         Defendants. | Case No.:  13-cv-00379 (MGC)<br><br>**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1(A)** |

Pursuant to Local Civil Rule 56.1(a) of this Court, defendants Anjost Corporation and Joseph Zaro (together, "Defendants") hereby submit the following statement of material facts as to which there is no genuine issue to be tried:

    **A.**    **Plaintiff Was an Exempt Commissary Manager for Defendants.**

    1.   Plaintiff Louis Rivera ("Plaintiff") was employed by Defendants from 2007 until 2012 as manager of Defendants' commissary, a customarily recognized department of the company.  *See* Deposition of Louis Rivera, dated October 8, 2013 ("Rivera Dep.") 12:9-14; 68:7-70:13; 84:9; Declaration of Adam G. Possidente, dated May 15, 2015 ("Possidente Decl.") Ex. B (Defendant's 2007 Personnel Profile Sheet, reflecting that Plaintiff's title was "Commissary Manager").

    2.   As commissary manager, Plaintiff's primary responsibility was to supervise and manage the between 14 and 15 other employees preparing food for distribution to Defendants' retail locations.  *See* Rivera Dep. 71:19-72:9; 72:15-21.

    3.   To that end, Mr. Rivera instructed those employees on which foods to prepare, how to do so, what other preparations to undertake, and dealt with any other issues that arose during the course of the day.  *See id.* 71:19-78-21.

4.   Plaintiff also hired employees, and participated in decisions to terminate employees.  *See id.* 79:19 ("The hiring and firing, I used to hire . . . ."); 81:10-20 (discussing how Defendants acted on Plaintiff's recommendations to terminate employees).

5.   During his tenure working for Defendants, Plaintiff was a salaried employee.  *See, e.g.*, *id.* 90:9-25; 92:7-14; 92:22-93:15; 93:16-94:14; 94:16-95:15; 95:17-25; 96:3-14; 96:16-97:6; 97:8-19; 101:16-23; 101:25-102:11; 102:12-21; 102:22-103:13; 103:15-104:2; 104:4-18; 104:20-105:7; 105:8-18; Possidente Decl. Exs C, E, F, G (sample pay stubs, establishing that Plaintiff received a salary while employed by Defendants).

6.   When he was hired, Plaintiff received a salary of $850 per week.  Possidente Decl. Exs. B (Defendants' 2007 Personnel Profile sheet for Plaintiff, reflecting $850 per week salary) & C (sample paystubs reflecting same salary).

7.   Plaintiff subsequently received a series of raises, such that his salary in 2012 was $1,377 a week.  *Id.* at Exs. D (Defendants' 2011 Personnel Profile sheet for Plaintiff, reflecting a $1,377 per week salary) & G (sample paystubs reflecting same salary).

8.   Plaintiff's salary was never subject to deduction for quality or quantity of time worked.  Instead, the only deductions were those statutorily required, such as Social Security or income taxes.  *See, e.g.,* Rivera Dep. 92:11-14 (admitting that Defendants' earning statement reflects no deductions other than statutory deductions for Medicare, income taxes, and Social Security); 93:11-14 (same); 94:11-14 (same); 95:-12-14 (answering "Yes, I guess so" to the question of "[a]nd there are no deductions here for your not having worked a full week or your being paid less than five days, correct?"); 97:14-19; 102:17-21; 103:9-13; 118:21-25; 122:13-16; *see also* Possidente Decl. Ex. C, E, F, G (sample earnings statements reflecting that Plaintiffs' salary was never subject to deductions for quality or quantity of time worked).

9. Plaintiff also received paid sick days, paid vacation, and paid personal time. *See, e.g.*, Rivera Dep. 114:2-115:21; 136:4-18 (answering "Yes") to question of "do I take this [paystub] to mean that you also, in addition to your salary, took a sick day and you were paid for a sick day?").

10. In those instances, Plaintiff still received his full weekly salary, without any deductions. *See* Possidente Decl. Exs. C, E, F, G (sample earnings statements).

**B.    Plaintiff Was Not Paid a Day Rate**

11. In addition to his normal workweek, Defendants at times also asked Plaintiff to work an extra day (typically a Saturday or Sunday). In those instances, in addition to his weekly salary, Plaintiff also received additional compensation in the form of $1/5^{th}$ of his weekly salary, in addition to his guaranteed salary. *See, e.g.*, Rivera Dep. at 111:7-112:18; 116:15-117:10; 117:12-118:10; 118:12-25; 122:2-16; 122:18-123:10; 123:23-124:10; 124:11-22; 124:23-125:10; 125:11-126:6; 126:8-126:18; 126:20-127:12; 127:14-127:23; 127:24-128:14; 128:16-129:14; 129:15-130:3; 130:5-21; 136:19-137:17; 137:18-138:8; 138:9-21; 138:22-139:18; 139:19-140:11; 140:13-141:7; 141:8-141:22; 143:15-144:2; 144:3-13; 144:14-22; 144:23-145:11; 145:13-24; 145:25-146:13; 146:14-25; 147:2-148:6; 148:7-20; 148:21-149:15; 149:16-150:2; 150:4-14; 150:15-151:7; 151:8-17; *see also* Possidente Decl. Exs. C, E, F, G.

12. In all cases, Plaintiff received his weekly salary each week, without fail. *See, e.g.*, Rivera Dep. 96:24-97:3; 97:14-19; 102:3-11; 105:24-106:2; 108:11-14; 116:21-117:3; 117:12-17.

13. Thus, rather than being paid on a "day rate," as Plaintiff claims, Plaintiff was actually a salaried employee who also received additional compensation for additional work.

Dated: New York, New York
       May 15, 2015

<div align="center">

**VENABLE LLP**

</div>

_____/s/_____
Michael J. Volpe
Adam G. Possidente
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone:  (212) 307-5500
Fax: (212) 307-5598

*Attorneys for Defendants Anjost Corporation
and Joseph Zaro*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LOUIS RIVERA,

                                   Plaintiff,

        -against-

ANJOST CORPORATION and JOSEPH
ZARO,

                             Defendants.
-----------------------------------------------------------------X

**13 CV 379(MGC)**

**DECLARATION OF
LOUIS RIVERA**

      LOUIS RIVERA, hereby declares, under penalties of perjury pursuant to 28 U.S. 1746 as follows:

1. I was employed by the Defendants from July 2007 until July 2012. During that period, I was allowed, for pay, five sick days, 2 personal days and one vacation week. I testified to this under oath. See page 115 of my deposition transcript attached to the Declaration of Adam Possidente.

2. During my tenure with Defendants, I never worked less than five days in any week, subject to my usage of sick days, personal days and vacation days. Many weeks I worked six or seven days.

3. From the day I was hired by Defendants until my departure in July of 2012, I never received a written contract or any written notice in any form from Defendants setting forth the terms of my compensation.

4. Based upon my conversations with John Apgar, who I dealt with when I was hired by the Defendants and confirmed by the manner in which I was paid by Defendants, I was to be paid on a daily basis. As I testified under oath, during a period of time

with Defendants I was paid a daily rate of $241.50 per day.  See Transcript p. 107, lines 22-23; p. 119, lines 20-21.  When I worked a five day week, I received $1,207.50.  When I worked an extra day, I received an additional day's pay of $241.50.  The rate of pay was increased on several occasions but the manner in which my compensation was determined never did.

5.  My typical workday ran for 12 hours.

6.  I was often requested to work weekends by Defendants.  Since I was hired to run the commissary, I believed that had I not worked the extra time for the Defendants they would not have kept me in the position.

Dated: May 29, 2015

/s/
_____
LOUIS RIVERA

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LOUIS RIVERA,

                                    Plaintiff,

                  -against-

ANJOST CORPORATION and JOSEPH
ZARO,

                                                      Defendants.
-------------------------------------------------------------------X

**13 CV 379(MGC)**

**DECLARATION OF
ROBERT S. POWERS**

        ROBERT S. POWERS, hereby declares, under penalties of perjury pursuant to 28 U.S.

1746 as follows:

1.  I am the attorney for the Plaintiff, Louis Rivera.

2.  I appeared before this Court for a conference on March 20, 2013.  At that

    conference, the attorney for the Defendants told this Court that the Plaintiff was paid

    a straight weekly salary and was paid that salary regardless of the number of hours

    and the number of days worked.  I advised the Court that Plaintiff was paid on a

    daily basis.  If he worked five days he received one amount and if he worked six

    days, he received a higher amount.

3.  The records received from Defendants show that Plaintiff was paid an amount based

    upon the number of days worked that week.

Dated: May 29, 2015

                                              /s/
                                        _____
                                        ROBERT S. POWERS

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUIS RIVERA,

                Plaintiff,

      – against –

ANJOST CORPORATION and JOSEPH ZARO,

               Defendants.

Case No.:  13-cv-00379 (MGC)

**DECLARATION
OF ADAM G. POSSIDENTE**

      I, **ADAM G. POSSIDENTE,** declare under penalty of perjury that the foregoing is true and correct:

      1.     I am an associate at the law firm Venable LLP in New York, New York.  Venable LLP represents Defendants Anjost Corporation and Joseph Zaro ("Defendants") in the above-captioned matter (the "Action").  I submit this Declaration in further support of Defendants' Motion for Summary Judgment (the "Motion").  I have personal knowledge of the facts stated herein, unless otherwise stated, and if called upon to do so, I would competently testify thereto.

      2.     True and correct copies of excerpts of plaintiff Louis Rivera's ("Plaintiff") deposition transcript, dated October 8, 2013, cited by Plaintiff in his opposition to the Motion are attached hereto as **Exhibit 1.**  While Plaintiff cited to these excerpts, he failed to attach them to his opposition papers.  Defendants attach them here for the Court's convenience.

Dated: New York, New York
        June 2, 2015

                            _____/s/_____
                                  Adam G. Possidente

# Exhibit 1

Page 107

                              L. Rivera

2    salaried pay?

3         A.    They'd give me an extra day's pay.

4    It's a holiday's pay.

5         Q.    Okay.

6               So, Mr. Rivera, then Anjost 238

7    reflects that you worked your regular workweek

8    plus the holiday pay and received extra pay

9    for that; correct?

10        A.    I worked that holiday.

11        Q.    Right.

12              So it reflects -- well, so this

13   document reflects that you worked your

14   regular -- the regular -- you received your

15   regular earnings; correct?

16        A.    Yes.

17        Q.    And the holiday earnings?

18        A.    That becomes another day.

19        Q.    Okay.

20              So -- correct.  So then your -- and

21   so your total then was --

22        A.    My total day is based on a daily

23   basis was $219.40.

24        Q.    Okay.

25              So then when you worked a holiday,

Page 119

L. Rivera

1

2      Q.    Let's go to Anjost 199, which is the

3   earnings statement for the next week, the

4   period end 8/24/08; correct?

5      A.    Correct.

6      Q.    And this document, once again,

7   reflects your regular salaried earnings of

8   1207, $1,207 in salary, and an extra day of

9   pay; correct?

10     A.    Correct.

11     Q.    And so we've got your salaried wage

12  and then you -- it looks like you worked an

13  additional weekend day or something; correct?

14     A.    This became now a sick day, six,

15  No. 6.  I would work on Sundays.  Monday

16  through Friday, plus Sunday.

17     Q.    So you were working Monday through

18  Friday, plus Sunday, and they would pay -- and

19  they were paying you your regular --

20     A.    A daily basis, which is my daily

21  pay, $241.40.

22     Q.    So you understood, Mr. Rivera, not

23  that they were paying you, notwithstanding the

24  fact that all of these documents -- excuse me.

25           So in addition to your salary, in

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LOUIS RIVERA,

                                        Plaintiff,

              -against-

ANJOST CORPORATION and JOSEPH
ZARO,

                                        Defendants.
------------------------------------------------------------------X

**13 CV 379(MGC)**

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' STATEMENT
OF UNDISPUTED FACTS
PURSUANT TO LOCAL RULE
56.1(A)**

Plaintiff, pursuant to Local Civil Rule 56.1(a), responds to Defendants' Statement of

Facts as follows:

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. The term "salaried" as used in paragraph 5 is a legal conclusion.  When Plaintiff

    worked a five day week, he was paid a fixed amount.  When Plaintiff worked a six

    day week, he was paid a higher amount that was proportional to the number of days

    that he worked.  When Plaintiff worked a seven day week, he was again paid a

    higher amount that was proportional to the number of days that he worked.  See

    Rivera Transcript, p 107, lines 22-23; page 119, lines 20-21.

6. When Plaintiff was first hired, he received the sum of $850 for five days work.

7. Plaintiff's compensation was raised in 2012 such that when he worked a five day

    week, he received $1,377.

1

8.  Plaintiff always received a minimum of five days pay while he worked for Defendants since he never worked less than five days during his tenure with Defendants. See Rivera Declaration, ¶2.

9.  Plaintiff was provided with 5 sick days, one week of paid vacation and two personal days. See Rivera Deposition, p. 115.

10. For the 5 sick days and 2 personal days that Plaintiff received, he did not have to work those days to receive his pay for that day.

11. Plaintiff was often requested to work weekends.  If Plaintiff worked one weekend day, he received an extra day's pay.  Rivera Declaration, ¶4.

12. Plaintiff always received his five days pay for each week since he always worked at least five days a week.  Rivera Declaration ¶2.

13. The statements on paragraph 13 are legal statements which do not require a response.  Plaintiff admits that he claims he was paid a day rate.

14. Plaintiff never received any written notice or confirmation from Defendants setting forth the terms of his compensation.  Rivera Declaration ¶3.

15. Defendant's counsel asserted to this Court at the initial conference that Plaintiff was always paid the same amount each week, regardless of the amount of hours or days worked.

Dated: May 29, 2015

LAW OFFICE OF ROBERT S. POWERS

/s/

Robert S. Powers
Attorney for Plaintiff
1540 August Road
North Babylon, NY  11703
(631) 940-7121

2

**MEMO ENDORSED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



LOUIS RIVERA,

Plaintiff,

– against –

ANJOST CORPORATION and JOSEPH
ZARO,

Defendants.

Case No.: 13-cv-00379 (MGC)

**NOTICE OF MOTION
FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1(a), and the Declaration of Adam G. Possidente and the exhibits annexed thereto, Defendants Anjost Corporation and Joseph Zaro (together, "Defendants") will move this Court, before the Honorable Miriam Goldman Cedarbaum, Courtroom 14A, 500 Pearl Street, New York, New York 10007, on June 4, 2015 at 11:30 a.m., for an order granting summary judgment against Plaintiff, and granting Defendants such other and further relief as the Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order of this Court entered on May 6, 2015, answering papers, if any, are required to be served on the undersigned no later than May 29, 2015.

Dated: New York, New York
       May 15, 2015

VENABLE LLP

_____/s/_____
Michael J. Volpe
Adam G. Possidente
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020

*Motion for summary judgment granted. For oral opinion, see record of proceedings. So ordered. June 4, 2015 Close case.*

*United States District Judge*

Telephone:  (212) 307-5500
Fax: (212) 307-5598

*Attorneys for Defendants Anjost Corporation
and Joseph Zaro*

To:    Robert S. Powers
Law Office of Robert S. Powers
1540 August Road
North Babylon, NY 11703
Telephone: (631) 940-7121
Email: rpowers435@optimum.net

*Counsel for Plaintiff*

- 2 -

A196

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

                                                  **13 CV 379(MGC)**

LOUIS RIVERA,

                        Plaintiff,

        -against-                   **NOTICE OF APPEAL**

ANJOST CORPORATION and JOSEPH
ZARO,

                        Defendants.
-----------------------------------------------------------X

     Notice is hereby given that Louis Rivera, plaintiff in the above-named case,

hereby appeals to the United States Court of Appeals for the Second Circuit from

the Order granting Defendants' motion for summary judgment entered in this

action on June 4, 2015.

                                 Law Office of Robert S. Powers

                                 Robert S. Powers
                                 Attorney for Plaintiff
                                 1540 August Road
                                 North Babylon, NY  11703
                                 (631) 940-7121