# 15-2143-cv

## United States Court of Appeals

### *for the*

## Second Circuit

LOUIS RIVERA,

*Plaintiff-Appellant,*

— v. —

ANJOST CORPORATION and JOSEPH ZARO,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

VENABLE LLP
*Attorneys for Defendants-Appellees*
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(212) 307-5500

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

CORPORATE DISCLOSURE STATEMENT .......................................1

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE................................................................1

    A.    Rivera was a Salaried Manager at Zaro's ............................................1

    B.    Rivera Commences This Litigation Following His Termination, and the District Court Correctly Grants Summary Judgment to Zaro's ....................................................3

SUMMARY OF THE ARGUMENT ........................................................4

STANDARD OF REVIEW ...................................................................7

ARGUMENT .......................................................................................8

    I.    THE DISTRICT COURT CORRECTLY HELD THAT RIVERA WAS AN EXEMPT MANAGER OF ZARO'S ..................8

        A.    Rivera Was Not Paid a Daily Rate.............................................12

        B.    Zaro's Has Established The Terms of Rivera's Employment Arrangement ........................................................17

    II.    RIVERA'S 56.1 RESPONSE IS DEFICIENT, AND ZARO'S 56.1 STATEMENT SHOULD BE DEEMED ADMITTED ..............19

CONCLUSION ...................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs.*,
   No. 06 Civ. 2142 (GEL), 2007 WL 4302514
   (S.D.N.Y. Dec. 7, 2007) ..............................................................................20

*Amash v. Home Depot U.S.A., Inc.*,
   No. 12 Civ. 837, 2014 WL 2465265 (N.D.N.Y. June 3, 2014) ...................11

*Anani v. CVS RX Servs., Inc.*,
   788 F. Supp. 2d 55 (E.D.N.Y. 2011), *aff'd*,
   730 F.3d 146 (2d Cir. 2013)............................................................... 13-14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).......................................................................................7

*Brown v. Henderson*,
   257 F.3d 246 (2d Cir. 2001) ......................................................................15

*Buckman v. Calyon Sec. (USA), Inc.*,
   817 F. Supp. 2d 322 (S.D.N.Y. 2011) .........................................................20

*FDIC v. Great Am. Ins. Co.*,
   607 F.3d 288 (2d Cir. 2010) ..........................................................................7

*Gallo v. Suffolk Cnty. Police Dep't*,
   360 F. Supp. 2d 502 (E.D.N.Y. 2005).........................................................22

*Havey v. Homebound Mortg., Inc.*,
   547 F.3d 158 (2d Cir. 2008)........................................................................13

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005) ..........................................................................7

*Kahn v. Superior Chicken & Ribs, Inc.*,
   331 F. Supp. 2d 115 (E.D.N.Y. 2004).........................................................11

*Loucar v. Boston Mkt. Corp.*,
   294 F. Supp. 2d 472 (S.D.N.Y. 2003).........................................................22

*Mario v. P & C Food Markets, Inc.*,
   313 F.3d 758 (2d Cir. 2002) ..........................................................................7

*Ramos v. Baldor Specialty Foods, Inc.*,
    No. 10 Civ. 6271 (RMB), 2011 WL 2565330
    (S.D.N.Y. June 16, 2011), *aff'd*, 687 F.3d 554 (2d Cir. 2012) ......... 11, 12-13

*Scotto v. Almenas*,
    143 F.3d 105 (2d Cir. 1998) ......................................................................7

*Stein v. Guardsmark, LLC*,
    No. 12 Civ. 4739 (JPO), 2013 WL 3809463
    (S.D.N.Y. July 23, 2013) ..........................................................................13

**Statutes & Other Authorities:**

29 C.F.R. § 541.100(a) .................................................................................8

29 C.F.R. § 541.118(b) ...............................................................................13

29 C.F.R. § 541.602(a) .................................................................................8

29 C.F.R. § 541.604 .............................................................................12, 13

29 C.F.R. § 541.604(a) ...................................................................14, 17, 18

29 C.F.R. § 541.604(b) ...............................................................................17

Fed. R. App. P. 26.1 .....................................................................................1

Fed. R. Civ. P. 56(a) .....................................................................................7

12 N.Y.C.R.R. § 142-2.14(c)(4)(i) ................................................................9

Local Rule 56.1 ..................................................................................*passim*

Local Rule 56.1(a) ................................................................................19, 20

Local Rule 56.1(c) .......................................................................................20

Local Rule 56.1(d) .......................................................................................20

N.Y. Labor Law § 195.1 .............................................................................19

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee Anjost Corporation, by and through its counsel of record, Venable LLP, hereby states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

## STATEMENT OF THE ISSUES

Whether summary judgment is appropriate in favor of an employer against an employee suing for overtime compensation where undisputed documentary evidence and admissions establish that the employee was properly classified as an "executive" employee under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and is therefore exempt from the overtime payment provisions of those statutes.

The District Court (Cedarbaum, J.) correctly decided this issue in the affirmative, and granted summary judgment to the employer.

## STATEMENT OF THE CASE

### A.     Rivera was a Salaried Manager at Zaro's

This is an appeal from the Southern District granting summary judgment to Appellee Anjost Corporation (together with Appellee Joseph Zaro, "Zaro's"), which operates retail locations selling various food items under the "Zaro's" banner.  Appellant Louis Rivera ("Rivera") was employed by Zaro's from 2007

until 2012 as a commissary manager. *See* A. 121 (Rivera Dep. at 12:9-14); A. 122-24 (*id.* at 68:7-70:13); A. 135 (*id.* at 84:9).[1] At the commissary, employees prepared food for distribution to Zaro's retail locations. *See* A. 126 (*id.* at 72:15-21). As manager, Rivera's primary responsibility was to supervise and manage the approximately 15 individuals working at the commissary. A. 125-26 (*id.* at 71:19-72:9). Rivera also hired employees, and participated in decisions to terminate employees. *See* A. 133 (*id.* at 79:19); A. 134 (*id.* at 81:10-20).

During his entire tenure working for Zaro's, Rivera was a salaried employee. *See, e.g.*, A. 141-42 (*id.* at 96:24-97:3) (answering "Yes" to the question of whether "your earnings statement reflects a regular salary wage of $850 a week, correct?"); A. 147-48 (*id.* at 105:24-106:2) (answering "Yes" to the question of "[a]nd this [earnings statement] reflect[s] your regular salary of $1,097, correct?"); *see also* A. 136 (*id.* at 90:9-25); A. 142 (*id.* at 97:14-19); A. 144 (*id.* at 102:3-11); A. 149 (*id.* at 108:11-14); A. 155 (*id.* at 117:12-17). That salary ranged from $850 per week in 2007 to $1,377 a week in 2012. *See* A. 39; A. 51 (Zaro's 2007 & 2011 Personnel Profile sheets for Rivera). Rivera also received paid sick days, paid vacation, and paid personal time. *See, e.g.*, A. 152-53 (Rivera Dep. 114:2-115:22);

---

[1] References to "A. ___" refer to the Appendix filed and served by Appellant on October 19, 2015. References to "SA. ___" refer to the Supplemental Appendix filed and served by Appellees contemporaneously with this brief. The Supplemental Appendix was necessitated by Appellant's failure to include in the Appendix the transcript of oral argument before the District Court on the at-issue summary judgment motion.

2

A. 166 (*id.* at 136:4-18). In those instances, Rivera still received his full weekly salary, without any deductions. *See* A. 41-49; A. 53-64; A. 66-86; A. 88-112 (sample earnings statements). There is no evidence that Rivera ever received less than his guaranteed salary for any week of work.

In addition to his normal workweek, Zaro's at times also asked Rivera to work an extra day (typically a Saturday or Sunday). In those instances, beyond his weekly salary, Rivera also received 1/5th of his weekly salary for each extra day worked. *See, e.g.*, A. 157-160 (Rivera Dep. 122:21-125:25); A. 168-171 (*id.* at 138:9-141-22); A. 175-78 (*id.* at 146:14-149:23). Thus, for example, when Rivera's weekly salary was $1,377, and he worked an additional day beyond his normal workweek, he received additional compensation of $275.40 for that day. *See* A. 175 (*id.* at 146:14-25); A. 88-112 (sample paystubs reflecting that compensation structure).

**B.** **Rivera Commences This Litigation Following His Termination, and the District Court Correctly Grants Summary Judgment to Zaro's**

Following his termination in 2012, Rivera commenced this action in January 2013, challenging his exempt status under both the FLSA and NYLL. Notwithstanding that Zaro's correctly classified Rivera as a manager exempt from overtime requirements, Rivera claimed that he was entitled to overtime compensation. While Zaro's produced relevant documents and took Rivera's

deposition, Rivera effectively failed to prosecute his case. Indeed, during a May 2015 court conference, the District Court repeatedly noted that Rivera's counsel had failed to prosecute this case, and stated that "the truth is I should dismiss for failure to prosecute." A. 37 (Tr. of May 6, 2015 Hrg. at 27:18-19).

However, the District Court ultimately instructed Zaro's to file a motion for summary judgment. Following briefing and oral argument, the District Court granted that motion, holding that "it is undisputed that the plaintiff here fits the category of exempt employee in the FLSA. He was paid on a salaried basis receiving at least $455 per week. He had management responsibilities and he customarily directed the work of two or more other employees and was himself . . . involved in personnel decisions including hiring and firing." SA. 15 (Tr. of June 4, 2015 Hrg. at 15:9-15). The Court accordingly dismissed Rivera's case in its entirety. This appeal followed.

## SUMMARY OF THE ARGUMENT

This is a case about an employee attempting to contort a legal compensation structure into a wage-and-hour violation. The District Court properly rejected these claims, and this Court should do the same.

There is no dispute that Rivera, a former manager of Zaro's commissary, meets all of the hallmarks of an exempt employee: Rivera's deposition testimony and Zaro's corporate records establish that Rivera received a weekly salary,

4

managed over a dozen employees at the commissary, and had authority to fire and

hire employees.  Based on these facts, the District Court correctly granted

summary judgment to Zaro's.

Despite this uncontroverted evidence, Rivera appeals, arguing that he is

owed overtime pay both because he was paid a "daily rate" (a set amount for each

day that he worked), rather than a salary, and because Zaro's has failed to establish

the terms of Rivera's "employment arrangement."  App. Br. 6.  There is no

evidence to support either of these claims.  (Tellingly, Rivera's brief is nearly

devoid of any citations to the record.)

Rivera's "daily rate" argument fails because the undisputed evidence

establishes that Rivera was a properly compensated salaried employee during his

entire tenure at Zaro's.  Specifically, in addition to his regular five day work week,

for which he received a set salary, Rivera sometimes also worked an additional day

in a given week.  In those cases, Zaro's paid Rivera additional compensation on

top of his salary, in the form of one-fifth of his weekly salary.  Rivera's claim

seems to be that, because Zaro's paid Rivera extra money for extra work, they also

paid him less money for less work, and thus paid Rivera a "daily rate."  This

argument is wrong on the facts and the law.  It is wrong on the facts because the

undisputed evidence—including Rivera's own (deficient) 56.1 Statement of

Undisputed Facts—establishes that Rivera received his salary each week, without

fail. And it is wrong on the law because the FLSA and NYLL explicitly allow employers to provide salaried employees with additional compensation for additional work, without endangering their exempt status. Indeed, courts from this Circuit have repeatedly reaffirmed that such a compensation policy is permissible. Rivera cannot challenge a legal compensation scheme with faulty reasoning and no documentary evidence.

Rivera's "employment arrangement" argument is equally flawed. There, Rivera cherry-picks a phrase from an irrelevant FLSA provision and argues without support that Zaro's has failed to establish the terms of Rivera's "employment arrangement." While Rivera declines to specify the nature of his complaint here, Rivera presumably argues that Zaro's has not established the terms of Rivera's compensation. But documentary evidence and Rivera's own admissions conclusively establish Rivera's employment arrangement: Rivera received a guaranteed salary every week, as well as additional compensation for additional work. Rivera's claim that Zaro's never provided him with "written notice of the terms of his employment arrangement" (App. Br. 7) pursuant to the New York Labor Law is thus irrelevant. There is no claim in this case that Zaro's failed to provide Rivera with such a notice, and Rivera's status as an exempt employee does not depend on that notice.

Put simply, the undisputed evidence establishes that Rivera was properly classified as an exempt employee and compensated in an entirely permissible manner. Rivera's unsupported claims to the contrary are meritless, and this Court should affirm the District Court's grant of summary judgment to Zaro's.

## STANDARD OF REVIEW

The Second Circuit reviews appeals from a grant of summary judgment de novo. *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 763 (2d Cir. 2002). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the burden of establishing its *prima facie* entitlement to relief by demonstrating that there is no genuine issue as to any material fact. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Once the moving party meets its burden, the opposing party must come forward with specific facts showing a genuine issue for trial. *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). The opposing party may not rely on mere "conclusory allegations or unsubstantiated speculation," but rather must present "evidence on which the jury could reasonably find for the non-movant." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotation marks, citations, and brackets omitted).

## **ARGUMENT**

The District Court correctly granted summary judgment to Zaro's, finding that "it is undisputed that the plaintiff here fits the category of [an] exempt employee in the FLSA." *See* SA. 15 (Tr. of June 4, 2015 Hrg. at 15:9-11). Because the undisputed evidence establishes that Rivera was properly classified as an exempt employee, this Court should affirm that judgment.

## I. **THE DISTRICT COURT CORRECTLY HELD THAT RIVERA WAS AN EXEMPT MANAGER OF ZARO'S**

Rivera's claim fails because Zaro's properly classified him as an executive exempt from applicable overtime requirements. An employee falls within the FLSA's "executive" overtime exemption when he: (1) is paid a salary basis[2] of at least $455 per week; (2) has the primary duty of either managing the employer's overall operation or managing a customarily recognized department thereof; (3) customarily and regularly directs the work of two or more other employees; and (4) has the authority to hire or fire other employees or is an employee whose suggestions and recommendations as to personnel decisions, including hiring, firing, and advancement, are given particular weight. *See* 29 C.F.R. § 541.100(a). The NYLL has a similar test, except that the salary basis was $536.10 per week

---

[2] An employee is paid a salary basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. 541.602(a).

from January 1, 2007 until July 23 2009, and $543.75 per week from July 24, 2009 until December 31, 2013.  *See* 12 N.Y.C.R.R. §142-2.14(c)(4)(i).

Rivera admits that "[t]here is no issue with respect to the duties requirement" of the executive overtime exemption.  App. Br. 5.  In other words, Rivera concedes that elements (2), (3), and (4) above are met.  That is because Rivera's own deposition testimony establishes just that:  With respect to element two, Rivera admitted that he "was the manager of the commissary" (A. 135 (Rivera Dep. 84:9)), and further testified that his primary responsibility as commissary manager was to "manage and supervise" Zaro's commissary, a customarily recognized department of the company.  *See* A. 126 (*id.* at 72:2-9).  Similarly, concerning element three, Rivera testified that he managed between 14 and 15 employees as commissary manager.  *See* A. 125 (*id.* at 71:21-25).  Finally, Rivera admitted that he had authority to hire and fire other employees, thereby satisfying element four.  *See* A. 133 (*id.* at 79:19) ("The hiring and firing, I used to hire . . . ."); A. 134 (*id.* at 81:10-20) (discussing how Zaro's acted on Rivera's recommendations to terminate employees).

Rivera fares no better on the one contested element above, the salary basis test.  Like the other elements, Rivera repeatedly admitted during his deposition that Zaro's paid him a salary.  For example, when shown an earnings statement concerning a week of work in 2007, Rivera admitted that the statement reflected

9

"regular earnings of $1,097 in a salaried wage." A. 145 (*id.* at 103:20-22). Rivera made similar admissions throughout his deposition, confirming that he received a salary. *See, e.g.*, A. 141-42 (*id.* at 96:24-97:3; 97:14-19); A. 144 (*id.* at 102:3-11); A. 146 (*id.* at 104:11-13); A. 147-48 (*id.* at 105:24-106:2); A. 149 (*id.* at 108:11-14); A. 155 (*id.* at 117:12-17). Zaro's pay records further establish that Rivera received his weekly salary (and a series of raises) each week, without fail. *See* A. 41-49 (sample pay records from 2007, reflecting Rivera's $850 weekly salary); A. 53-64 (additional sample pay records from 2007, reflecting that Rivera received a raise of his weekly salary, to $1,097); A. 66-86 (sample pay records from 2008, reflecting that Rivera was then receiving a weekly salary of $1,207); A. 88-112 (sample pay records from 2011, reflecting that Rivera was receiving a weekly salary of $1,377). Finally, Zaro's Personal Profile Sheets—corporate records containing basic information for each employee, including compensation—state that Rivera was paid a salary. *See* A. 39 (Zaro's Personnel Profile Sheet from 2007); A. 51 (Zaro's Personnel Profile Sheet from 2011).

Taken together, Rivera's repeated admissions and Zaro's undisputed documentary evidence—Rivera makes no attempt to impugn these records— establish that Rivera received a salary each and every week while employed by Zaro's. Rivera thus satisfies every element of the FLSA and NYLL's analogous exemption tests. Courts in this Circuit routinely grant summary judgment to

employers where, as here, exempt employees seek overtime compensation. *See, e.g.*, *Ramos v. Baldor Specialty Foods, Inc.*, No. 10 Civ. 6271 (RMB), 2011 WL 2565330, at *8 (S.D.N.Y. June 16, 2011) (granting summary judgment where, "[i]n light of [employee's] repeated admissions at his deposition and the other evidence in the record, no reasonable jury could conclude that Plaintiffs were not managers") *aff'd*, 687 F.3d 554 (2d Cir. 2012); *Amash v. Home Depot U.S.A., Inc.*, No. 12 Civ. 837, 2014 WL 2465265, at *7 (N.D.N.Y. June 3, 2014) (granting defendant employers' motion for summary judgment where plaintiff employee was properly classified as an exempt manager under FLSA and NYLL); *Kahn v. Superior Chicken & Ribs, Inc.*, 331 F. Supp. 2d 115, 120 (E.D.N.Y. 2004) (granting defendant employer's motion for summary judgment where, "based on these undisputed facts and plaintiff's record admissions . . . no reasonable jury could conclude that plaintiff was not a [manager]"). So to here. Combined with the undisputed documentary evidence, Rivera's admissions during his deposition establish that there is no genuine issue of material fact that Rivera was a properly compensated exempt employee. The District Court's decision granting summary judgment to Zaro's should be affirmed.

On appeal, Rivera makes two meritless arguments: (1) that Rivera was improperly paid a "daily rate," rather than a salary, and (2) that Zaro's has not established the terms of Rivera's "employment arrangement." App. Br. 5, 6. The

District Court properly rejected both of these arguments, and this Court should follow.

### A.     Rivera Was Not Paid a Daily Rate

Rivera claims that he "was paid a daily rate" by Zaro's.  App. Br. 6.  This is wrong.  As fully explained above, in addition to his salaried workweek, Zaro's would sometimes request that Rivera also work Saturday or Sunday.  In those instances, Zaro's paid Rivera an amount equal to one-fifth of Rivera's weekly salary, in addition to his guaranteed salary.  *See, e.g.*, A. 150-51 (Rivera Dep. 111:7-112:18); A. 154-56 (*id.* 116:15-117:10 & 117:12-118:10); *see also* A. 41-49 (sample pay records reflecting a weekly salary of $850); A. 53-64 (sample pay records reflecting a weekly salary of $1,097); A. 66-86 (sample pay records reflecting a weekly salary of $1,207); A. 88-112 (sample pay records reflecting a weekly salary of $1,377).

This compensation structure does not upset Rivera's exempt status. Applicable regulations from the United States Department of Labor sanction this structure:  "An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis."  29 C.F.R. 541.604. The NYLL "applies the same exemptions as the FLSA."  *See Ramos v. Baldor*

*Specialty Foods, Inc.*, 687 F.3d 554, 556 n.1 (2d Cir. 2012) (internal quotation marks omitted); *see also* A. 114-116 (December 7, 2010 N.Y. Dept. Labor Opinion Letter, at 2) (stating that "the [New York] requirement that these employees be paid a salary, notwithstanding any differences in the threshold amount of that salary, is interpreted in line with the regulations explaining the FLSA salary requirement. Those requirements are explained in Federal regulation 29 C.F.R. § 541.600 *et seq.* . . . .").

The plain language of 29 C.F.R. § 541.604 authorizes Rivera's compensation structure of a salary and extra pay for extra work. Courts in this Circuit have applied this regulation to reject claims similar to Rivera's present argument. *See, e.g.*, *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 161 (2d Cir. 2008) ("[A]dditional compensation besides the salary is not inconsistent with the salary basis of payment." (quoting 29 C.F.R. § 541.118(b))); *Stein v. Guardsmark, LLC*, No. 12 Civ. 4739 (JPO), 2013 WL 3809463, at *5 (S.D.N.Y. July 23, 2013) (granting summary judgment dismissing employee's claims for overtime pay and noting that "[a]pplying [29 C.F.R. § 541.604(a)], courts have consistently held that an employee's receipt of additional amounts, *including overtime,* above his predetermined base compensation does not destroy the employee's otherwise valid salary status" (internal quotation marks omitted)); *Anani v. CVS RX Servs., Inc.*, 788 F. Supp. 2d 55, 61 (E.D.N.Y. 2011), *aff'd,* 730

F.3d 146 (2d Cir. 2013) (granting summary judgment to employer and holding that an employer may "provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis" (quoting 29 C.F.R. §541.604(a))).

Rivera's compensation is consistent with these requirements. Rivera's deposition testimony and Zaro's corporate records establish that Rivera received his weekly salary each week, without fail. *See, e.g.*, A. 141-42 (Rivera Dep. 96:24-97:3 & 97:14-19); A. 144 (*id.* at 102:3-11); A. 147-48 (*id.* at 105:24-106:2); A. 149 (*id.* at 108:11-14); A. 154-55 (*id.* at 116:21-117:17); A. 41-49 (sample pay records reflecting a weekly salary of $850); A. 53-64 (sample pay records reflecting a weekly salary of $1,097); A. 66-86 (sample pay records reflecting a weekly salary of $1,207); A. 88-112 (sample pay records reflecting a weekly salary of $1,377). There is no evidence that Rivera's salary was ever reduced if he worked less than a full week. Nor could there be, in light of Rivera's repeated admissions to the contrary. *See, e.g.*, A. 137 (Rivera Dep. 92:11-14); A. 138 (*id.* at 93:11-15); A. 140 (*id.* at 95:12-15); A. 142 (*id.* at 97:14-19); A. 144 (*id.* at 102:17-21); A. 145 (*id.* at 103:9-13); A. 156 (*id.* at 118:21-25); A. 157 (*id.* at 122:13-16). Instead, Rivera admitted that he received sick, vacation, and

14

personal time, and that he received his salary whenever he took such time off. *See, e.g.*, A. 152-53 (*id.* at 114:2-115:22); A. 166 (*id.* at 136:4-18). In addition, when he agreed to work an extra day in any given work-week, Rivera also received additional compensation for doing so, beyond his salary. *See, e.g.*, A. 150-51 (*id.* 111:7-112:18); A. 154-55 (*id.* at 116:15-117:10); A. 155-56 (*id.* at 117:12-118:10). This accords precisely with the requirements of the FLSA and NYLL, and does not affect Rivera's status as an exempt employee. The District Court agreed, noting that "it is undisputed that the plaintiff here fits the category of exempt employee in the FLSA." SA. 15 (Tr. of June 4, 2015 Hrg. at 15:9-11).

Rivera's unsupported arguments in response fail. Rivera claims that he was "paid a daily rate," (App. Br. 6), and that Rivera "never worked less than five days every week that he was employed by [Zaro's]." *Id.* at 7. This illogical argument fails, for at least three reasons. First, Rivera offers no citations to admissible evidence in support of this argument. Indeed, the only arguable support for this proposition is a declaration from Rivera that impermissibly contradicts his prior deposition testimony. *See, e.g.*, *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001) (holding that a party cannot defeat summary judgment with factual allegations "made for the first time in the plaintiff's affidavit opposing summary judgment [when] that affidavit contradicts her own prior deposition testimony"). Nor could it: The undisputed evidence establishes that

15

Rivera received a weekly salary while employed by Zaro's. *See supra* 9-10, 12-15.

Second, this argument is wrong on the facts: As Rivera admitted during his deposition, he did work less than five days a week while employed by Zaro's, taking paid sick, vacation, and personal time. *See, e.g.*, A. 152-53 (Rivera Dep. at 114:2-115:22); A. 166 (*id.* at 136:4-18). As a salaried employee, Rivera was paid even though he did not work on those days. *Id.*

Third, and critically, Rivera's claim that he received a set amount of pay each week effectively admits that Rivera received a salary. Rivera's unconvincing argument that this compensation structure somehow reflects a "daily rate" runs contrary to undisputed evidence and should be rejected. Indeed, Rivera has made other, similar admissions. For example, Rivera's 56.1 Response—which, as fully discussed below, fails to properly rebut any of the statements in Zaro's 56.1 Statement—admits that "[w]hen [Rivera] worked a five day week, he was paid a fixed amount. When Rivera worked a six day week, he was paid a higher amount proportional to the number of days that he worked." A. 192 (Pl. 56.1 Stmt., ¶ 5). That response also admits that Rivera "always received a minimum of 5 days['] pay while he worked for [Zaro's]." *See* A. 193 (*id.* ¶ 8). In other words, Rivera agrees that he received a salary for his regular work week, and additional

16

compensation if he worked additional days beyond that work week. That accords precisely with 29 C.F.R. 541.604(a) and this Circuit's case law.

Put simply, undisputed evidence establishes that Rivera was properly compensated under applicable regulations. The District Court held similarly, and this Court should affirm.

### B. Zaro's Has Established The Terms of Rivera's Employment Arrangement

Rivera's alternative argument fares no better. Here, Rivera claims that summary judgment is inappropriate because Zaro's has failed to establish the "terms of the employment arrangement." App. Br. 6. The Court should reject this meritless argument both because it cites to an irrelevant FLSA provision and because it ignores the documentary evidence establishing Rivera's compensation structure.

As an initial matter, Rivera is wrong to suggest that Zaro's relies on 29 C.F.R. 541.604(b) —which allows employers to compute an exempt employee's earnings on an hourly or shift basis, so long as the "employment arrangement" guarantees that the employee receives a weekly minimum salary—for the proposition that Rivera was properly compensated. *See* App. Br. 5. Rather, as fully set forth above, Zaro's relies on 29 C.F.R. 541.604(a), which provides that "[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the

17

employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. 541.604(a). As fully discussed above, there can be no dispute that Zaro's properly compensated Rivera pursuant to this regulation.

What's more, Zaro's presented unrebutted evidence establishing the terms of Rivera's employment arrangement. Rivera repeatedly admitted during his deposition that he was paid a salary by Zaro's. *See, e.g.*, A. 141-42 (Rivera Dep. 96:24-97:3); A. 147-48 (*id.* at 105:24-106:2); A. 149 (*id.* at 108:11-14); A. 154-55 (*id.* at 116:21-117:17). Zaro's corporate records confirm these admissions, and establish that Rivera received a salary of between $850 and $1,377 each and every week that he was employed by Zaro's. *See* A. 41-49; A. 53-64; A. 66-86; A. 88-112 (sample earnings statements reflecting that Rivera received a salary). Rivera received this minimum guaranteed salary every week, and that salary was never subject to deduction for the quality or quantity of time worked. *See, e.g.*, A. 137 (Rivera Dep. 92:11-14) (admitting that Zaro's earning statement reflects no deductions other than statutory deductions for Medicare, income taxes, and Social Security); A. 138 (*id.* at 93:11-15) (same); A. 139 (*id.* at 94:11-14) (same); A. 140 (*id.* at 95:12-15) (same); A. 142 (*id.* at 97:14-19) (same); A. 144 (*id.* at 102:17-21) (same); A. 145 (*id.* at 103:9-13) (same); A. 156 (*id.* at 118:21-25) (same); A. 157 (*id.* at 122:13-16) (same).

18

Finally, Rivera's argument that Zaro's never provided him with a wage statement notice is a red herring. There is no claim related to Zaro's alleged failure to provide Rivera with a wage notice. Indeed, the applicable statute is focused solely on providing employees with notice of basic information such as their salary. *See* N.Y. Labor Law § 195.1. This statute has no bearing on the issues in this case—i.e., whether Rivera was properly compensated, or the terms of that compensation. Rivera thus appears to use this as a proxy to claim that Zaro's has not established the terms of Rivera's "employment arrangement." App. Br. 7-8. But, as fully set forth above, Rivera repeatedly admitted that he received a salary, along with extra compensation for extra work. *See supra* at 9-10, 14-15. Rivera's status as an exempt employee, which does not depend on a NYLL notice, cannot be in dispute.

## II. <u>RIVERA'S 56.1 RESPONSE IS DEFICIENT, AND ZARO'S 56.1 STATEMENT SHOULD BE DEEMED ADMITTED</u>.

Rivera's failure to comply with the provisions of Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts (the "Local Rules") constitutes a separate basis for this Court to affirm the District Court's grant of summary judgment.

Rivera does not meaningfully contest any of the statements in Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1(A) ("Zaro's 56.1 Statement"). *See* A. 181-84. This is because he cannot. Instead, Plaintiff's

Response to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1(A) ("Rivera's 56.1 Response") fails to explicitly deny those statements, and instead responds with irrelevancies unsupported by admissible evidence. *See* A. 192-93. This violates the Local Rules, which provide that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted . . . ." S.D.N.Y. Local Rule 56.1(c). The rule also cautions that "[e]ach statement… controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." S.D.N.Y. Local Rule 56.1(d). Under this rule, "56.1 statements not explicitly denied by plaintiff are deemed admitted." *Buckman v. Calyon Sec. (USA), Inc.*, 817 F. Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011); *see also AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs.*, No. 06 Civ. 2142 (GEL), 2007 WL 4302514, at *5 (S.D.N.Y. Dec. 7, 2007) (movant's Rule 56.1 statements admitted "unless specifically controverted by a correspondingly numbered paragraph in the opposing party's Rule 56.1 statement and followed by citation to evidence" (internal quotation marks omitted)).

Because Rivera's 56.1 Response does not comply with this rule, the statements in Zaro's 56.1 Statement—which are all supported by admissible evidence—should be deemed admitted. For example, paragraph 6 of Zaro's 56.1

Statement states that "[w]hen he was hired, [Rivera] received a salary of $850 per week." A. 182 (Zaro's 56.1 Stmt., ¶ 6). Rivera does not dispute this statement, and instead responds—without citation to evidence—that "[w]hen [Rivera] was first hired, he received the sum of $850 for five days['] work." A. 192 (Rivera's 56.1 Response, ¶ 6). Rivera provides a similar non-response to paragraph 7 of Zaro's 56.1 Statement, which states that Rivera "subsequently received a series of raises, such that his salary in 2012 was $1,377 a week." A. 182 (Zaro's 56.1 Stmt., ¶ 7). There, Rivera responds by stating that his "compensation was raised in 2012 such that when he worked a five day week, he received $1,377." *See* A. 192 (Rivera's. 56.1 Response, ¶ 7). Other paragraphs suffer the same deficiency. *See, e.g.*, A. 193 (*id.*, ¶10) (responding to Zaro's statement that, when Rivera took sick, personal, or vacation time, Rivera "still received his full weekly salary" (A. 183) by stating that "[f]or the 5 sick days and 2 personal days that [Rivera] received, he did not have to work those days to receive his pay for that day."); A. 193 (Rivera's 56.1 Response, ¶ 12) (responding to Zaro's statement that "[i]n all cases, [Rivera] received his weekly salary each week, without fail" (A. 183) by stating that Rivera "always received his five days['] pay for each week since he always worked at least five days a week").

These responses are all improper. Rather than explicitly deny Zaro's allegations with admissible evidentiary support, Rivera instead responds with

irrelevant, unsupported contentions that are frequently tantamount to an admission that Rivera received a salary. *See, e.g.*, A. 192 (Rivera's. 56.1 Response, ¶ 5) ("When Rivera worked a six day week, he was paid a higher amount that was proportional to the number of days that he worked."); A. 193 (*id.* ¶ 8) (Rivera "always received a minimum of 5 days['] pay while he worked for [Zaro's]."). Because Rivera has not explicitly denied any of the statements in Zaro's 56.1 statement, the Court should deem those statement admitted. *See, e.g.*, *Loucar v. Boston Mkt. Corp.*, 294 F. Supp. 2d 472, 478 (S.D.N.Y. 2003) (holding that the facts set forth in defendant's Rule 56.1 statement were deemed admitted where "plaintiff offer[ed] nothing but unsupported, conclusory statements and denials to refute defendant's properly-supported statements of material fact in its Rule 56.1 Statement"); *Gallo v. Suffolk Cnty. Police Dep't*, 360 F. Supp. 2d 502, 505 n.2 (E.D.N.Y. 2005) (deeming facts set forth in defendants' Rule 56.1 statement admitted where "Plaintiff's Rule 56.1 statement merely provid[ed] his own recitation of the facts and fail[ed] to specifically controvert the material facts set forth in defendants' statement").

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the District Court's decision granting summary judgment in favor of Appellees Anjost Corporation and Joseph Zaro.

Dated:  New York, New York
       December 18, 2015

                                           **VENABLE LLP**

                                           <u>/s/ Michael J. Volpe</u>
                                           Michael J. Volpe
                                           Adam G. Possidente
                                           Rockefeller Center
                                           1270 Avenue of the Americas, 24th Floor
                                           New York, New York 10020
                                           Telephone:  (212) 307-5500
                                           Fax: (212) 307-5598

                                           *Attorneys for Appellees Anjost Corporation*
                                           *and Joseph Zaro*

23